Larry Gene GRAYBILL, Appellant,

v.

The STATE of Texas, Appellee.

No. 59519.

Court of Criminal Appeals of Texas,
Panel No. 3.

July 9, 1980.

Joe F. Cannon, Houston, for appellant.

Carol S. Vance, Dist. Atty., Nicolas Serna, and Hogan S. Stripling, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ODOM, DAVIS and CLINTON, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for possession of a short-barrel firearm, V.T. C.A., Penal Code Sec. 46.06. Punishment, enhanced by allegation and proof of two prior felony convictions, was fixed at life.

In the fourth ground of error, appellant contends it was reversible error to overrule his objection to the charge and to refuse to charge the jury on the law of circumstantial evidence. A statement of the facts of the case is therefore required.

At about 11:30 a. m. on March 31, 1977, a maid at the Gulf Coast Motor Inn in Houston came to room 212 of the motel to clean the room. When she knocked on the door and attempted to determine whether anyone was present, shots were fired through the door at her. She reported the matter at once to her supervisor, who in turn reported it to the manager. The police were called and it was discovered that the room had been abandoned. Since clothing, weapons and contraband had been left in the room, it was believed the occupants would return at a later time.

At about 4:00 that afternoon, a woman who had been seen with her dog earlier in the day, and who was recognized as one of the occupants of room 212, was spotted in the motel area. She asked one of the maids if her dog had been seen. At about this time a police car passed by and the woman from room 212 "ducked back," and then fled down the stairs and disappeared.

From the location of the stairs and the observations of the maid, it was believed she entered room 135. This was reported to the manager, who called the police.

On prompt arrival, Officer Martin and other members of the Houston Police Department were told of the morning's shooting incident and of the fact that an occupant of the room where the shooting took place was thought to have entered room 135. The officers went to that room and Martin knocked on the door. After they heard what sounded like movements inside the room, someone opened the door slightly. Martin said they were police and asked if they could come in. The person at the door said, "Yes," or "Sure, come on in." He was arrested, and appellant was seen lying on the bed, moving toward the end of the bed with one hand out of sight from Martin. According to another officer appellant was lying on the bed and "kept attempting to reach over for something there." Martin told appellant to raise his hand slowly and if he had anything in it, to drop it. Another officer then looked under the bed and found a loaded, sawed-off shotgun.

Appellant testified that he was not staying at the motel, but had come to visit a Mr. Lessing, who was renting the room. He further testified that he had arrived about 1:00 in the afternoon, had "fixed" with heroin, and was under the influence of that drug when the police arrived. He denied having seen the shotgun or even knowing it was present in the room.

Appellant argues the circumstances connecting him to the shotgun recovered from under the bed[1] did not amount to direct evidence of possession of the weapon, and entitled him to a charge on circumstantial evidence. He relies on *Belmarez v. State,* 509 S.W.2d 635 (Tex.Cr.App.) in which a conviction for possession of heroin was reversed because a circumstantial evidence charge was refused. The record in that case showed these facts:

"The record reflects that an automobile driven by appellant, and containing two other passengers, was stopped by officers because of a traffic violation. Heroin was found under the front seat on the driver's side of the vehicle. There is no testimony that appellant actually possessed the heroin. There was no showing that the automobile was owned by appellant, and the record clearly reflects that appellant did not have sole access to the automobile where the heroin was found."

Two other cases in which convictions for possessory offenses were reversed for denial of a circumstantial evidence charge are *Crawford v. State,* 502 S.W.2d 768 (Tex.Cr. App.) and *Selman v. State,* 505 S.W.2d 255 (Tex.Cr.App.). We quote here the proof from each of those cases that was held to require a circumstantial evidence charge:

" . . . Deputy Thomas E. Barker, one of the officers executing the warrant, testified that he first saw appellant in a bedroom with three other persons. Apparently there were at least eight individuals in the house. When Deputy Barker entered the room, appellant attempted to evade him by diving from the bed into a closet where he hid under a pile of clothes. This ruse was unsuccessful, however, for Deputy Barker was able to ferret out appellant and place him under arrest. Upon removing appellant from the closet, the deputy noticed a recent puncture mark on his left arm and blood 'dribbling down' from the wound. At this time appellant did not appear to be under the influence of narcotics, but by the time he was placed in jail he seemed to be 'high.' Various quantities of narcotics and narcotics paraphernalia were found through the house. On the bed where appellant and two other persons were sitting, a plastic vial of heroin was found. On a nearby nightstand, the deputies discovered spoons and a syringe." *Crawford v. State,* supra, at 769.

---

1. Another shotgun was recovered from under a pile of laundry, and the parts of a disassembled pistol were also seized. The shotgun under the bed is the one more closely connected to appellant.

" . . . Officer Marriott testified that he stood about two feet from the *open* rear window of the bungalow and looked into the lighted kitchen and saw Samuel Burke rolling a cigarette with a substance he obtained from a match box. Officer Marriott further testified that he smelled the strong odor of burning marijuana and saw pills on the kitchen table. He also saw appellants Phillips, Rogers and Selman, in the kitchen with Burke. He identified these individuals at trial. All *four* officers looked into the window. After observing the suspects, Officers Marriott and Sanders went around to the front of the bungalow and saw Rogers and Phillips coming out the front door. One of the girls hollered 'Cops,' and they ran back into the bungalow slamming the door on the way. The door of the bungalow was open because it did not shut when it was slammed, so the officers followed the girls to the kitchen. Officer Marriott found Burke in the kitchen with the cigarette in one hand, a matchbox in the other, and a pistol in his belt. Both of the girls were apprehended in the kitchen. Officer Burgess, who remained outside at the window, told Officer Marriott that Selman had run into the bedroom. Selman was found hiding in a closet.

"Upon a further search, 31 match boxes containing a green-like substance were found on the kitchen table and 52 white tablets, and 65 red capsules also were found in the kitchen by Officer Marriott. A large amount of money was found on Burke and Selman. Officer Marriott testified that he found particles of burnt marijuana and ashes lying on the kitchen table, and remnants of burnt cigarette butts on the floor and table.

"The bungalow contained an old chair and couch in the living room, a table in the kitchen, and a bed frame without a mattress in the bedroom. There were no clothes, no dishes, no kitchen utensils; forks, knives, spoons and no other sign people were living there. None of the four persons arrested claimed the bungalow as his address or residence. In fact, all four gave addresses to the police that were different than the address of the bungalow and different from each other." *Selman v. State,* supra, at 256–257.

In this case appellant was lying on the bed under which the shotgun was found, and appeared to be reaching toward where it was located. However, he was not seen in physical possession of the weapon, was not alone in the room, and it was not shown whether he was registered in the room. None of the motel employees who testified and were asked were able to identify appellant as having been seen around the motel earlier in the day. Although the employees had seen several people connected with the shooting incident, the testimony was that appellant was not any of those people.

Since this is a possessory offense, we are unable to draw a parallel between the circumstances relied upon to prove possession here and in *Belmarez, Crawford* and *Selman,* on the one hand, and the strong circumstances held to be the equivalent of direct testimony that the defendant was the actor in non-possessory offenses in the cases of *Ales v. State,* 587 S.W.2d 686 (Tex.Cr. App.), and *Adams v. State,* 588 S.W.2d 597 (Tex.Cr.App.), on the other hand.

When we compare the facts of this case with those of the three cases quoted above, we conclude appellant was entitled to a charge on circumstantial evidence. It was reversible error to overrule his objection and deny the requested charge.

The judgment is reversed and the cause remanded.