**Curtis Wayne WILLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00249–CR.**

Court of Appeals of Texas,
El Paso.

July 21, 1982.

Discretionary Review Granted
Oct. 20, 1982.

Bradshaw & Cass, Ronald S. Bradshaw, D. Channing Bradshaw, Pasadena, for appellant.

John B. Holmes, Jr., Dist. Atty., Bill Willms, Eric Hagstette, Asst. Dist. Attys., Houston, for appellee.

Before STEPHEN F. PRESLAR, C. J., and WARD and OSBORN, JJ.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is an appeal from a conviction for unlawfully carrying a handgun on or about the person. The jury assessed punishment at one year confinement in the county jail and a fine of $2,000.00. We affirm.

At trial, the State offered the testimony of Officer D. J. Gafford. In the early morning hours of May 14, 1980, Gafford observed a 1979 Cadillac El Dorado driving in an erratic manner on the Houston freeway. The license plate number sequence appeared too old for a 1979 vehicle. Gafford called for a license check while he followed the Cadillac. The dispatcher advised that the plates belonged on a 1973 Mazda. Officer Gafford activated his red lights and closed on the Cadillac. The vehicle increased its speed, changed lanes frequently, left the freeway and then reentered.

Gafford was able to clearly observe two individuals in the Cadillac—the driver, later identified as Norman Huffman, and a right front passenger, identified as Appellant. During the three-mile pursuit, the Appellant's movements were readily discernible due to a large cowboy hat which he was wearing. Gafford observed the Appellant turn and look back at the patrol vehicle. He then turned back and bent forward and

to the right. His left shoulder was above the seat, and his right shoulder dropped from sight. The officer testified that he appeared to be stuffing something under the passenger seat. The Appellant looked back at the patrol car and then repeated the bending-stuffing movement. Immediately after this second movement, the driver stopped the Cadillac. Huffman exited the driver's side and met the officer. He claimed ownership of the vehicle. His speech and gestures were characterized as nervous. Gafford conducted a *Terry* patdown with negative results.

Gafford also approached the Appellant. The latter disclaimed knowledge of Huffman or the ownership of the vehicle. He indicated that he was simply hitchhiking. Due to his agitated manner and the circumstances noted previously, Gafford had Appellant exit the vehicle. A *Terry* frisk disclosed no weapons.

Officers Jefferies and Rushing arrived with information that the Cadillac was stolen. Both subjects were taken into custody and placed in Gafford's vehicle. An inventory of the Cadillac revealed a loaded .32 caliber pistol between the front bucket seats. Two briefcases were found behind the driver's seat. One case contained a small quantity of marijuana and a company check payable to C. W. Willis, the Appellant. The check was dated December 14, 1979. The amount was $18.06. The check was endorsed by the Appellant to N. R. Huffman.

A loaded .38 caliber handgun, a small bag of marijuana and two hypodermic syringes were found within two or three inches of each other under the front passenger seat. A search of the Appellant revealed nearly $6,000.00 in cash.

Appellant did not testify. Norman Huffman testified that he had purchased the Cadillac for $1,500.00 on May 13, 1979, without knowledge that it was stolen. He claimed ownership of both handguns, both briefcases and the marijuana, but denied knowledge of the syringes. He produced a receipt for the .32 caliber handgun indicating a purchase date of December 18, 1979.

He testified that he purchased the .38 caliber pistol from Joe Elrod on April 20, 1980. He and Elrod went for a ride in the Cadillac, to shoot the pistols, on the day of the arrest. When Elrod left, he placed the .38 under the passenger seat. Elrod testified in a manner consistent with Huffman.

Huffman testified that, after dropping Elrod off, he met the Appellant at a bar and gave him a ride. He stated that he had only seen the Appellant once before, in March or April of 1980. He first learned his name after the arrest. He offered no explanation for the Appellant's check, found in his briefcase and endorsed to him. He denied having any business dealings or exchange of money with the Appellant.

Appellant presents two grounds of error: the trial court's refusal to submit a charge on circumstantial evidence and insufficiency of the evidence. Appellant predicates his insufficiency of evidence point on the validity of his contention as to the requested charge on circumstantial evidence.

Appellant was never observed in actual physical possession of the .38 caliber pistol found under his seat. In his brief, he asserts that the State's case rested on only three evidentiary points: proximity to the handgun, furtive gestures in the direction of the handgun's location and Appellant's nervous manner at the time of the arrest. These facts, coupled with the presence of another individual with access to the handgun, place the case within the realm of circumstantial evidence. Appellant correctly cites the rule defining circumstantial evidence as direct proof of minor facts from which the main fact sought to be proved must be inferred. *Ransonette v. State*, 550 S.W.2d 36, 42 (Tex.Cr.App.1976); *Crawford v. State*, 502 S.W.2d 768, 769 (Tex.Cr.App. 1973).

■ In this case, the Penal Code required the State to prove two essential elements— 1) carrying the handgun on or about the person 2) with intent or knowledge. It is settled that the latter mental culpability element is generally proven by inference from conduct and surrounding circumstanc-

es. A circumstantial evidence charge need not be given with regard to proving the mens rea of a criminal offense. *Ransonette* at 43; *Nichols v. State*, 554 S.W.2d 196, 198 (Tex.Cr.App.1977); *Davis v. State*, 516 S.W.2d 157, 161 (Tex.Cr.App.1974); *Belcher v. State*, 504 S.W.2d 858, 862 (Tex.Cr.App. 1974). The appellate question is thereby narrowed to a determination of the nature and quantity of proof with regard to the actus reus of the offense charged.

Two of the three points which Appellant contends are the sole foundation of his conviction are the furtive gestures and nervousness which Officer Gafford testified to. In attacking the insufficiency and circumstantial nature of this evidence, he relies upon a number of cases dealing with probable cause for stops and arrests. *Brown v. State*, 481 S.W.2d 106 (Tex.Cr.App.1972); *Faulk v. State*, 574 S.W.2d 764 (Tex.Cr.App. 1978); *Arsiaga v. State*, 372 S.W.2d 538 (Tex.Cr.App.1963).

The attempt to analogize the insufficiency of furtive gestures to support detention to the insufficiency of such evidence as an element of proving guilt is faulty. It fails to recognize the difference in the perspectives from which such evidence is viewed in the two situations. The probable cause determination necessitates a prospective view of the gestures to assess the reasonableness of projecting an incriminating interpretation. In the case at hand, there is no challenge to the legitimacy of the stop. The nature and location of the seized items were properly before the jury. In assessing the proof of Appellant's guilt, the trial court and the jury were entitled to adopt a retrospective view of the furtive gestures, proceeding from the pistol, marijuana and syringes under Appellant's seat to an interpretation of his state of mind at the time of the repeated bending and stuffing movements. Appellant's reliance on the probable cause cases is unfounded. The furtive gestures and nervousness, in this case, were both relevant and highly probative of the elements of the offense.

Appellant next contends that the third premise of his conviction was his proximity to the .38 caliber handgun. Since his access was not exclusive, he contends that the State was required to establish an affirmative link between himself and the weapon. He relies heavily on narcotics possession cases involving multiple access to the seized contraband. We agree with the requirement of an affirmative link, but find Appellant's cited cases distinguishable on their facts.

*Waldon v. State*, 579 S.W.2d 499 (Tex.Cr. App.1979), and *Dubry v. State*, 582 S.W.2d 841 (Tex.Cr.App.1979), both involved prosecutions for possession of marijuana. In each case, the marijuana was delivered by aircraft. In *Waldon*, the defendant was never observed in the plane. Nor was any contraband found on his person or in his vehicle. He was observed at the airport some time after the plane arrived, and a key to the airplane was in his possession. Marijuana residue was found on the floor of the aircraft. His name appeared on the airplane rental contract but the lessor could not identify him at trial. The appellate court held this to be a circumstantial evidence case in which no link was established to the marijuana and only a general link established between the defendant and the aircraft.

*Dubry* presented an almost identical quantum of evidence. The defendant was found in possession of a truck key. Marijuana residue was found in the bed of the truck, located near the airport. Registration papers to that truck were found on a subject arrested at the airport on the night of the delivery. The case against the latter individual was in itself circumstantial. The link to Dubry was far too tenuous to support a conviction.

Unlike the defendants in *Waldon* and *Dubry*, the Appellant was in the vehicle with the seized handgun. In fact, he was in closer proximity to it than the only other occupant, the driver. In *Curry v. State*, 465 S.W.2d 154, 155 (Tex.Cr.App.1971), police officers approached a vehicle which was blocking traffic. The defendant was driving, and there were five other individuals in the car. A pistol was observed partially

protruding from under the right front passenger's seat, still within reach of the defendant. The appellate court affirmed the conviction, finding there was sufficient evidence that the driver intentionally carried the handgun "about his person."

In *Courtney v. State,* 424 S.W.2d 440 (Tex.Cr.App.1968), the Court of Criminal Appeals affirmed a conviction where the defendant was the driver of a vehicle in which a pistol was found in the glove compartment. A passenger was in greater proximity to the glove compartment than the defendant. The driver testified that the pistol belonged to his wife and that he did not know it was in the vehicle. The wife testified that before the driver and passenger left the house, she gave the gun to the passenger to protect her husband. The court held there was sufficient evidence to submit the factual issue to the jury and to support the resulting guilty verdict.

By implication, Appellant relies on two other cases involving the sufficiency of evidence in weapon cases, *Jones v. State,* 371 S.W.2d 883 (Tex.Cr.App.1963) and *Summerville v. State,* 164 Tex.Cr.R. 591, 301 S.W.2d 913 (1957). In *Jones,* there were five occupants in the car, and the weapon was found outside the vehicle. The facts place that case in line with *Waldon* and *Dubry.* In *Summerville,* a pistol was found in the glove compartment. The defendant was driving, but not shown to be the owner of the vehicle. Three or four other occupants were in the car. The appellate court reversed for insufficiency of the evidence. The later *Curry* opinion expressly overruled *Summerville.*

The affirmative link narcotics cases, upon which Appellant relies, all involved multiple parties having access to the contraband. In such cases the State was required to proceed from the contraband, to the ownership of the premises or vehicle in which it was found, to establish the link with the defendant. This is appropriate in situations where the defendant is not observed in actual possession or dramatic, individualized proximity to the substances. An underlying assumption is that true ownership of the

building, vehicle, or container is associated with the ownership or control of the contraband. That is not the case here. Both subjects were in a stolen vehicle. Appellant's status as a passenger does not weaken the State's case. It is not analogous to a situation in which the defendant is shown to be nothing more than a visitor in a house containing narcotics. At best it is a neutral factor. At worst, his presence in the stolen vehicle and his relationship to Huffman serve as further incrimination.

Appellant is incorrect in the restricted view he presents as to the three elements upon which his conviction was based. In addition to proximity, furtive gestures and nervousness, there were other factors which the jury had available in its determination. Appellant and Huffman were riding in a stolen car. There was not simply one gun in greater proximity to Appellant; there were two guns, each in proportionate proximity to the two occupants. There were also twin caches of marijuana. One was in the briefcase behind the driver's seat, which Huffman claimed ownership of. The other was within two inches of the .38 caliber pistol under the Appellant's seat. Two syringes were also found next to the pistol under the Appellant, which Huffman denied any knowledge of.

After the stop, Appellant attempted to disassociate himself from Huffman and the car. Huffman testified in this fashion at trial, indicating that he had only seen the Appellant on one prior occasion in March or April, 1980. He denied any business transactions or exchange of money with the Appellant. In contrast, the officers found the December 18, 1979, check, made out to the Appellant, in Mr. Huffman's briefcase. The check showed Appellant's endorsement over to Huffman.

We are confronted with a case consisting of both direct and circumstantial evidence of Appellant's carrying the .38 caliber handgun. The Appellant's proximity to the weapon and his repeated movements toward the weapon are primary facts from which custody of the weapon may be directly deduced. They are not minor facts

which cumulatively produce an inference of guilt. An individual is guilty of the offense if he carries the weapon not only *on* his person but *about* his person. The latter is demonstrated in this case by direct evidence. His state of mind may be inferred from his conduct without necessitating a circumstantial evidence charge.

Appellant calls attention to the decision in *Graybill v. State*, 601 S.W.2d 353 (Tex.Cr. App.1980), where the appellate court reversed for failure to charge on circumstantial evidence. Police were summoned to a motel room. When the door opened, the defendant was seen lying on the bed. His arm was out of sight beside the bed. A sawed-off shotgun was found under the bed. Another shotgun was found under a pile of laundry. A disassembled pistol was also found in the room. The actual tenant of the room was present when the police entered. Testimony revealed that the defendant was a visitor only. He made no incriminating or inconsistent statements.

■ The facts are similar to the present case, but not sufficiently similar to justify reversal. As indicated above, in the absence of observed actual possession, the State must establish an affirmative link between the defendant and the item seized. In *Graybill*, three weapons were found in various locations in the room. The room's lawful tenant was present. The case lacked the additional factors present in this case, from the chase through the finding of Appellant's check. The proximity and location of the defendant's arm in *Graybill* were too ambiguous to constitute direct evidence of guilt. The opposite is true here.

The present case is more akin to *Ransonette v. State*, 550 S.W.2d 36, 42–43 (Tex. Cr.App.1976). The defendant was convicted as a party to a kidnapping for ransom. The victim was abducted by two individuals. She was only able to identify the defendant's brother. She also identified the blue and white van in which she was transported. Ransom demands were traced to a public telephone which was placed under surveillance. When a subsequent call was made, the defendant and his identified brother were at the telephone booth. The brother made the call; the defendant stood to the side. The defendant was later seen driving the van, although it was owned by his brother. After the victim's release, the police raided the brother's apartment. Both subjects were there. Police found the sunglasses used to obscure the victim's vision. The appellate court placed emphasis on the fact that the ransom money was divided into two piles and two separate sets of luggage were packed and ready for departure. The brother made an incriminating comment, but the defendant remained silent. In its initial opinion, the court ruled that the error in not submitting a charge on circumstantial evidence was cured by the submission of an instruction on the law of principals. On rehearing, the latter instruction was viewed as a State's charge, providing no benefit to the defendant. The court also reversed its position on the circumstantial evidence finding that the evidence was equivalent to direct proof of guilt. Consequently, the conviction was affirmed under the juxtaposition rule.

As in *Ransonette*, it is significant that Appellant was not merely present and in greater proximity to the .38 than Huffman. There were two distinct sets of weapon and drug contraband, one associated with each of the areas occupied by the subjects.

■ This case also justifies application of the juxtaposition rule expressed in *Romo v. State*, 593 S.W.2d 690, 695 (Tex.Cr.App. 1980). Where the facts are in such close relationship to the main fact sought to be established as to be the equivalent of direct testimony, no circumstantial evidence charge need be given. *Adams v. State*, 588 S.W.2d 597, 598 (Tex.Cr.App.1979); *Ales v. State*, 587 S.W.2d 686, 688 (Tex.Cr.App. 1979).

■ The location of the .38 caliber weapon, the furtive movements of the Appellant, the distribution of the other contraband in the car, the Appellant's effort to sever his relationship to the vehicle and driver, and the check in the briefcase eliminate the need for an instruction on circumstantial

evidence. Appellant's Ground of Error No. Two is overruled.

As previously noted, Ground of Error No. One is predicated on the validity of Appellant's complaint as to the circumstantial evidence charge. Under such a charge, the State would have been required to negate, beyond a reasonable doubt, every reasonable hypothesis other than the Appellant's guilt. Absent such a charge, the testimony of Huffman and Elrod merely presents a factual issue for the jury to resolve. As indicated above, there was ample evidence to support their conclusion. Ground of Error No. One is overruled.

The conviction is affirmed.