**Olin Junior THOMAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–89–652–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 15, 1990.

Discretionary Review Granted
Feb. 20, 1991.

J. Curtiss Brown, C.J., dissented and filed opinion.

Michael B. Charlton, Houston, David A. Bishop, Gilmer, for appellant.

Jerome Aldrich, Angleton, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

A jury convicted appellant of carrying a deadly weapon in a penal institution and assessed punishment, enhanced by two prior convictions, at imprisonment for life. Appellant brings four points of error. For the purpose of this appeal we find it necessary to address only appellant's second point of error. We reverse and acquit.

On May 13, 1988, guards at the Darrington Unit, Texas Department of Corrections, were conducting a random cell search. Two guards went to the cell of appellant and informed him he would be strip searched and that his cell would be searched. Appellant removed his clothing except for his left shoe which he refused to give to the guards. The guards told appellant that unless he surrendered the shoe, a "use of force" measure would be used to get the shoe. Appellant then bent over and picked up an object out of his left shoe and tossed the item on the bottom bunk of the cell. He then handed the shoe to the guard. A guard ordered appellant to hand over the object on the bunk. Appellant complied and the guard observed the object was a homemade stabbing device known as a "shank." A "shank" is an instrument made by sharpening a hard object to a point. Appellant was subsequently indicted and convicted under TEX.PENAL CODE ANN. § 46.11(a), of carrying a deadly weapon in a penal institution.

In his second point of error appellant argues there was insufficient evidence to sustain the conviction. Specifically, appellant argues the evidence was insufficient for the jury to find beyond a reasonable doubt that he carried a deadly weapon as required for a conviction under TEX.PENAL CODE ANN. § 46.11(a). We agree.

In reviewing challenges to the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1970); *Butler v. State*, 769 S.W.2d 234, 239 (Tex. Crim.App.1989) (reconfirming the *Jackson* standard of review).

Under the TEX.PENAL CODE ANN. § 1.07(a)(11), a deadly weapon is defined as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

The first part of the definition refers to weapons that are deadly weapons per se. A knife is not a deadly weapon per se. *Denham v. State*, 574 S.W.2d 129, 130 (Tex.Crim.App.1978). A homemade stabbing device, a "shank" in this case, is not a deadly weapon per se. Thus, in order for the "shank" to qualify as a deadly weapon, we must look to "the manner of its use or intended use."

At trial the prosecution presented two Texas Department of Correction guards as witnesses. Both testified that they had seen homemade stabbing devices, i.e. "shanks", used to cause serious bodily injury and death. However, during cross-examination, the guards testified they did not see the appellant make threatening movements with the "shank" or that he had it displayed other than to remove it from his shoe and hand it to the guard as requested. There was no testimony that appellant used any threatening words or gestures toward the guards. Further, the guards testified that they had no idea what appellant's intended use for the "shank" was at the time it was discovered.

The Amarillo Court of Appeals in *Hernandez v. State*, 649 S.W.2d 720, 722 (Tex. App.—Amarillo 1982, no pet.) held that where a weapon was not actually used to cause death or serious bodily injury, two elements must be proven in order to find the weapon was a deadly weapon under TEX.PENAL CODE ANN. § 1.07(a)(11)(B). *See also Garza v. State*, 695 S.W.2d 726, 728 (Tex.App.—Dallas 1985, pet. granted), *aff'd on other grounds*, 725 S.W.2d 256. First, the item used as a weapon must be capable of causing the requisite harm. *Hernandez*, 649 S.W.2d at 722.

■ Second, there must be evidence that the weapon was displayed or used in a manner indicating an intent to cause death or serious bodily injury. *Orosco v. State*, 590 S.W.2d 121, 124 (Tex.Crim.App.1979); *Hernandez*, 649 S.W.2d at 722. It is not necessary, however, that wounds actually be inflicted. *Dominique v. State*, 598 S.W.2d 285, 286 (Tex.Crim.App.1980); *Limuel v. State*, 568 S.W.2d 309, 311–312 (Tex.Crim.App.1978).

When the evidence in this case is evaluated in light of the foregoing principles, its insufficiency is apparent. While the testimony revealed that the "shank" was capable of causing serious bodily injury or death, there was no evidence that the "shank" was displayed or used in a manner showing an intent to cause death or serious bodily injury. The prosecution did not meet the requirements of TEX.PENAL CODE ANN. § 1.07(a)(11)(B). Thus, the evidence was insufficient for the jury to find beyond a reasonable doubt that the "shank" was a deadly weapon as is required for a conviction under TEX.PENAL CODE ANN. § 46.11(a). Appellant's second point of error is sustained.

Sustaining appellant's second point of error disposes of the case. Appellant's third point of error is based on grounds similar to the point we have sustained. We have examined appellant's other points of error and find them to be without merit. They are overruled. The conviction is reversed and the court below is directed to enter a judgment of acquittal.

J. CURTISS BROWN, Chief Justice, dissenting.

"Et tu, Brute?" Once again the Texas Legislature has managed to stab itself and the public in the back. In drafting TEX.PENAL CODE ANN. § 46.11 the Legislature failed to think before it enacted. Worse yet, such drafting has caused the Court of Criminal Appeals to acquit persons who rightfully should have been convicted under § 46.11.

TEX.PENAL CODE ANN. § 46.11 reads in part:

Deadly Weapon in Penal Institution

(a) A person commits an offense if, while confined in a penal institution, he intentionally, knowingly, or recklessly:

(1) carries on or about his person a deadly weapon; or

(2) possesses or conceals a deadly weapon in the penal institution.

At first glance this appears to be a perfectly satisfactory statute. It is clear that we do not want inmates or unauthorized personnel carrying or hiding weapons in our penal institutions. It would create a danger to prison personnel, hapless visitors and other inmates to allow such behavior. However, the Legislature destroyed its own purpose in writing such a statute by putting the words "deadly" in front of "weapon."

As the majority points out, a knife is not a deadly weapon per se. *Denham v. State*,

574 S.W.2d 129, 130 (Tex.Crim.App.1978). Thus, to show a knife is a deadly weapon the court must look to its use or intended use. TEX.PENAL CODE ANN. § 1.07(a)(11)(B). This rule is quite logical in that we do not desire that people who carry pocketknives or Swiss Army knives for their own benign purposes be arrested for having a "deadly weapon." But a distinction must be made between an ordinary knife and a shank.

A shank is a unique device created almost exclusively by those confined in penal institutions. In fact, the term "shank" is not defined as a weapon in any dictionary. Its definition comes exclusively from within the prison walls: a homemade stabbing device. It is common knowledge that these shanks are made and used by inmates to kill or seriously wound others. But even if it were not common knowledge, the testimony in this case by a Texas Department of Corrections officer aptly demonstrates it:

> (Prosecutor) Q: Okay. Could you tell the jury approximately how many homemade stabbing devices or shanks you have come across during your employment with the Texas Department of Corrections?
>
> (Officer) A: I'd say approximately forty or fifty.
>
> Q: Okay. Have you ever seen anybody get stabbed or seen the results of a stabbing as a result of one of these homemade stabbing devices or shanks?
>
> A: Yes, sir, I have.
>
> Q: Approximately how many stabbings have you seen?
>
> A: About two dozen.

To say that a shank is a knife and thus not a deadly weapon per se is ludicrous. Under TEX.PENAL CODE ANN. § 1.07(a)(11)(A), a deadly weapon is defined as:

> A firearm, *or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury.*

The public knows that a kitchen knife is designed for use in the kitchen, that a Swiss Army knife is designed for any little job that may present itself, but a shank is designed and crafted to hurt or kill people in the penal setting. It cannot be seriously asserted that inmates are making these shanks to clean their fingernails or to make wood carvings to send home for the holidays. These weapons have only one purpose: the infliction of serious bodily injury and/or death.

Because the Legislature has seen fit to require the weapon to be "deadly", it is incumbent on the courts to take action and recognize that a shank, like a firearm, is a deadly weapon per se. Its purpose, its manner of creation and the place where it exists all show that a shank is manifestly designed to cause serious bodily injury or death. This clearly falls within the definition of deadly weapon. To require that the shank be exhibited in some threatening manner or used to injure someone before a violation of § 46.11 occurs cannot be what was intended by the Legislature. In fact, a strict reading of § 46.11(a) would mean that there could only be a violation of (a)(2) if the inmate or person were concealing a firearm because one cannot conceal and exhibit a weapon simultaneously, and so far a firearm has been the only weapon held to be deadly per se. Surely there are other weapons that are deadly per se or the Legislature would have simply said "firearm" and left the rest of the language out of § 1.07(a)(11)(A).

The Legislature should rewrite the statute to make it a violation to carry or conceal any weapon in a penal institution. Further, the courts should not be hesitant to recognize that a shank is per se a deadly weapon.