Marion BERRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–91–069–CR.

Court of Appeals of Texas,
Waco.

July 8, 1992.

Charlotte K. Lang, Staff Attorney, Inmate Legal Services, Huntsville, for appellant.

B.N. (Tuck) Tucker, Jr., Special Prosecuting Unit, Huntsville, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

Marion Berry was convicted by a jury of possession of a deadly weapon in a penal institution, for which he was assessed 12½ years in prison. TEX. PENAL CODE ANN. § 1.07(a)(11)(A), (B) (Vernon 1974) & § 46.-11(a)(2) (Vernon 1989). He appeals on a single point alleging that the evidence was insufficient to show that the instrument possessed was a deadly weapon. We will overrule the point and affirm the judgment.

Berry is an inmate at the Ferguson Unit of the Texas Department of Criminal Justice (TDCJ). Charles Barrington, an employee with the TDCJ, testified that he heard a scraping noise of metal rubbing on concrete. He determined that the noise was coming from Berry's cell. As he approached the cell, he saw Berry bent over, rubbing something on the floor. When Barrington confronted him, Berry jumped up and hid the object behind his back. After Barrington ordered him to strip to be searched, Berry turned over the object—a five-inch-long metal bolt which had been sharpened on one end and wrapped with duct tape on the other end. Barrington identified the object as a "shank," which he characterized as "a deadly weapon in a penal institution."

Barrington testified that: prisoners are not allowed to work in their cells; there is no legitimate function for the shank; it is designed to do deadly harm; it is capable of causing serious bodily injury or death; the duct tape allowed for a better grip; it is contraband; and he had seen inmates stabbed with similar shanks. Three other witnesses testified that the object was a shank, that it was capable of causing serious bodily injury or death, that they had seen stabbings with similar objects, and that the object had no legitimate function.

Berry's sole point is that the evidence is insufficient to prove that the instrument possessed was a deadly weapon. Section 1.07(a)(11) of the Penal Code defines a deadly weapon as:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(a)(11)(A), (B). Berry was indicted for possession of a deadly weapon, "to wit: a sharp metal object, that in the manner of its use and intended use was capable of causing death and serious bodily injury." Thus, he was indicted under subsection (B) of section 1.07(a)(11). The court's charge, however, authorized the jury to find that the shank was a deadly weapon under either subsection (A) or (B). Berry did not object to the charge and has no point alleging error in the charge.

The standard of review for sufficiency challenges is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Geesa v. State*, 820 S.W.2d 154, 156–57 (Tex. Crim.App.1991). Under the *Jackson* standard, we do not position ourselves as a thirteenth juror in assessing the evidence; rather, we position ourselves as a final, due-process safeguard ensuring only the rationality of the factfinder. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). We do not make our own myopic determination of guilt from reading the cold record. *See id.* We do not disregard, realign, or weigh evidence. *See id.* We have only the discretion to determine if any rational trier of fact could have found, based on the evidence admitted at trial, the essential elements of the offense beyond a reasonable doubt. *See Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991).

The Penal Code defines two types of deadly weapons. TEX.PENAL CODE ANN. § 1.07(a)(11)(A), (B). The first part of the definition refers to weapons that are dead-

ly by design—the type of weapons that "the force of inertia has impelled us to persist in calling them 'deadly weapons *per se.*'" *Thomas v. State*, 821 S.W.2d 616, 619 (Tex.Crim.App.1991). Thus, an object may be "deadly by design" if it is either "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *Id.* at 619–20; TEX.PENAL CODE ANN. § 1.07(a)(11)(A). The second part of the definition refers to weapons that are deadly by usage, both actual and intended. TEX. PENAL CODE ANN. § 1.07(a)(11)(B).

Under subsection (A), the evidence is sufficient if it shows the weapon to be deadly by design. *Id.* § 1.07(a)(11)(A); *Thomas*, 821 S.W.2d at 620. Barrington testified that the shank was designed to do harm to another person, that the weapon was capable of causing death, and that there was no legitimate function for the weapon. The remaining witnesses also testified that the shank was capable of causing death and had no legitimate purpose. If the evidence is sufficient to establish that the object was "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury," no other proof is required. *Id.* It is not necessary that the State prove that the object was really capable of causing death, either in the manner of its actual use or in the manner of its intended use. *Id.* Whether an object is a deadly weapon by design depends upon the evidence. *Id.* We believe that, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the shank confiscated from Berry was deadly by design—his design. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Geesa*, 820 S.W.2d at 156–57.

In the alternative, the definition in subsection (B) requires proof that the weapon was "in the manner of its use or intended use capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(11)(B). Berry argues that there *was* no evidence that he intended to use the object to cause death or serious bodily injury. Shanks are homemade stabbing devices common to penal institutions. As Chief Justice Brown aptly stated: "It cannot be seriously asserted that inmates are making these shanks to clean their fingernails or to make wood carvings to send home for the holidays. These weapons have only one purpose: the infliction of serious bodily injury and/or death." *Thomas v. State*, 801 S.W.2d 540, 543 (Tex. App.—Houston [14th Dist.] 1990) (dissenting opinion), *rev'd*, 821 S.W.2d 616 (Tex. Crim.App.1991). The witnesses testified that shanks are used by inmates to kill or seriously wound people; that the weapon possessed by Berry was capable of causing serious bodily injury or death; and that there was no legitimate function for the confiscated weapon. The Legislature has made possession of a deadly weapon in a penal institution a crime. TEX.PENAL CODE ANN. § 46.11. The jury, as a rational trier of fact, was entitled to believe that Berry's only possible reason for possession of the shank was his intention to use it to cause death or serious bodily injury. *See Jackson*, 443 U.S. at 318–19, 99 S.Ct. at 2788–89; *Geesa*, 820 S.W.2d at 156–57.

We believe that a rational trier of fact could have found that the shank possessed by Berry was both a deadly weapon by its design and by its intended use. *See id.;* TEX.PENAL CODE ANN. § 1.07(a)(11)(A),(B). We overrule the point and affirm the judgment.