Tommy Joe **RAMIREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08-94-00195-CR.

Court of Appeals of Texas, El Paso.

March 3, 1995.

J.K. 'Rusty' Wall, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty. of Midland County, Midland, for State.

Before BARAJAS, C.J. and McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Tommy Joe Ramirez appeals his conviction for possession of a deadly weapon in a penal institution, enhanced. A jury found Appellant guilty and the court, upon finding both enhancement paragraphs true, assessed his punishment at thirty-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

## I. Denial of Right to a Speedy Trial

█ In his first point of error, Appellant contends that he was denied his right to a speedy trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Texas Constitution.[1] The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment. *Barker v. Wingo,* 407 U.S. at 515, 92 S.Ct. at 2184, 33 L.Ed.2d 101. The same right is provided to an accused under the Texas Constitution. TEX. CONST. art. I, § 10; *Hull v. State,* 699 S.W.2d 220, 221 (Tex.Crim.App. 1985).

Appellant was arrested for this offense on April 15, 1993, and formally charged by an indictment filed on May 21, 1993. The trial court first set Appellant's case, along with twenty-nine other criminal cases, for jury trial on September 27, 1993. According to the court's setting notice, the cases were to be called in sequential order. Appellant's case, which was twenty-fifth on that list, was apparently not reached during that trial week. Consequently, his case was re-set for trial as the twenty-second case on November 8, 1993. Again, his case was not reached. On January 31, 1994, Appellant, acting *pro se* even though he was represented by appointed counsel, filed a document entitled "Motion for Speedy Trial." After a brief hearing conducted on March 17, 1994, the trial court set Appellant's case for trial to begin on March 28, 1994. Appellant claims in his brief that trial began on April 10, 1994. However, our review of the record reveals that trial began on March 28, 1994.

### A. *Presentation of Speedy Trial Claim at Trial*

Before we are required to analyze the asserted denial of Appellant's right to a speedy trial, the record must reflect that Appellant raised his speedy trial claim in the trial court. *See Mulder v. State,* 707 S.W.2d

908, 914–15 (Tex.Crim.App.1986) (defendant's failure to file motion to dismiss on speedy trial grounds in trial court presented nothing for review on appeal); *Serna v. State,* 882 S.W.2d 885, 889–90 (Tex.App.—Corpus Christi 1994, no pet.) (the appellant has the burden to establish that he asserted the right to a speedy trial in the trial court; asserting the right for the first time on appeal waives the issue). In this case, Appellant presented his claim to the trial court in a *pro se* motion for speedy trial which the court considered during pretrial hearings.

### B. *Barker v. Wingo Analysis*

█ The framework for Sixth Amendment speedy trial analysis was set forth by the United States Supreme Court in *Barker v. Wingo. Emery v. State,* 881 S.W.2d 702, 708 (Tex.Crim.App.1994). No definite period of time has been held to be a *per se* violation of a defendant's right to a speedy trial; alleged violations are considered on a case by case basis. *Emery,* 881 S.W.2d at 708, *citing Barker v. Wingo,* 407 U.S. at 529–30, 92 S.Ct. at 2191–92. When engaging in the *Barker v. Wingo* balancing test, the reviewing court must consider four factors:

(1) the length of the delay;

(2) the reason for the delay;

(3) whether the defendant asserted his speedy trial rights; and

(4) any resulting prejudice to the defendant.

*Emery,* 881 S.W.2d at 708, *citing Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2191. None of the four factors alone is a necessary or sufficient condition to finding a deprivation of the right to a speedy trial. *See Barker v. Wingo,* 407 U.S. at 533, 92 S.Ct. at 2193.

### C. *Burden of Proof*

█ The defendant has the burden of first showing that sufficient delay has occurred to require application of the *Barker v. Wingo* balancing test. *State v. Hernandez,*

---

1. In considering Appellant's state speedy trial claim, we must apply a balancing test identical to the one established in *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). *Harris v. State,* 827 S.W.2d 949, 956

(Tex.Crim.App.1992); *Chapman v. Evans,* 744 S.W.2d 133, 135 (Tex.Crim.App.1988). Therefore, we will not undertake a separate analysis of that contention.

830 S.W.2d 631, 635 (Tex.App.—San Antonio 1992, no pet.). Upon such a showing, the burden shifts to the State to justify the delay; the defendant then has the burden of showing his diligent assertion of the right to a speedy trial and prejudice resulting from the delay. *Id.* at 635.

### D. *Application of the Factors*

#### 1. Length of the Delay

█ The length of the delay is measured from the time the defendant is arrested or formally accused. *Harris,* 827 S.W.2d at 956, *citing United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). To some extent, the length of the delay is a triggering mechanism, so that a speedy trial claim will not be heard until passage of a period of time that is, *prima facie,* unreasonable under the existing circumstances. *Harris,* 827 S.W.2d at 956, *citing Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. There must be enough of a delay to be presumptively prejudicial to the defendant before it becomes necessary to consider the other three factors in the *Barker* analysis. *Emery,* 881 S.W.2d at 708; *Lazcano v. State,* 836 S.W.2d 654, 657 (Tex. App.—El Paso 1992, pet. ref'd).

Appellant's case was not tried until eleven months after his arrest. The case was not complicated and the State's case-in-chief consisted of only two witnesses. Even though there is no evidence that the delay was deliberately caused by the State, we find the delay sufficient to require us to consider the remaining factors.

#### 2. Reason for the Delay

█ The State has the initial burden of justifying a lengthy delay. *Emery,* 881 S.W.2d at 708; *Turner v. State,* 545 S.W.2d 133, 137–38 (Tex.Crim.App.1976). In light of a silent record or one containing reasons insufficient to excuse the delay, it must be presumed that no valid reason for delay existed. *Turner,* 545 S.W.2d at 137–38. In examining the reasons for the delay, different weights should be assigned to different reasons. *Emery,* 881 S.W.2d at 708. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Emery,* 881 S.W.2d at 708. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the State rather than with the defendant. *Emery,* 881 S.W.2d at 708.

█ The State did not put on any evidence at the pretrial hearing for the purpose of explaining the delay. Appellant would have us hold this failure to directly explain the reason for the delay at the hearing against the State. While it might be the better practice for the State to offer evidence and provide a direct explanation, we do not construe *Barker v. Wingo* or *Turner* as requiring the State to do so in every case. The State has met its burden of providing a reason for the delay if the record reflects sufficient reasons. Furthermore, when we consider the manner in which Appellant presented his claim to the trial court, we find it inappropriate to hold the failure to put on evidence at the hearing against the State. In his written motion, Appellant specifically requested that the trial court immediately set his case for trial *or* dismiss the indictment. Thus, he expressly sought dismissal of the indictment only if the court did not grant his request for an immediate trial. The trial court initially entered an order refusing to consider Appellant's *pro se* motion on the ground he was represented by appointed counsel. Our review of the record reveals that the pretrial hearing was not called for the purpose of considering the speedy trial motion, but rather addressed Appellant's complaints about his trial counsel's lack of communication with him. When the court advised Appellant that he would appoint a different attorney to represent him, Appellant asked the trial judge to reconsider his motion for speedy trial and allow trial counsel to remain on his case. In response, the judge stated he would provide Appellant with a trial the next week and allow trial counsel to remain on the case, but he would appoint an additional attorney to represent Appellant along with trial counsel. Appellant presented no evidence on his motion, and in fact, seemed satisfied with the

court's ruling. Since the trial court granted Appellant's request and set the case for immediate trial, it appears to us that the State had no opportunity or obligation to explain the delay.

On appeal, the State argues that the delay was due to: (1) a crowded criminal trial docket; (2) miscommunication or lack of communication between Appellant and trial counsel; and (3) plea negotiations. The evidence supports only the first proffered explanation. Appellant's case was first set for trial less than four months after his arrest, but was not reached on two occasions due to the large volume of cases on the trial docket. Although there is some evidence in the record that Appellant perceived that trial counsel had not adequately communicated with him, there is no evidence from which we can infer that any problem between Appellant and counsel contributed to the delay. Finally, the State argues that ongoing plea negotiations contributed to the delay. With regard to those negotiations, we have found only one small reference in the record. In a pretrial hearing held on March 23, 1994, Appellant's trial counsel stated to the trial court that the plea agreement that had been previously announced had not been consummated. While this is some evidence that plea negotiations were ongoing, there is no evidence that the negotiations contributed to the delay. Thus, we find that the record supports only the State's first explanation. Since the delay in this case was not unduly protracted and is due to a crowded trial docket, this factor does not weigh heavily against the State.

### 3. Assertion of the Right to a Speedy Trial

■ Even though Appellant's case had twice been set for trial, there is no evidence in the record that Appellant objected to the delay when the trial was re-set. Further, he did not raise a speedy trial complaint until January 31, 1994. Although this failure to invoke the right earlier did not amount to waiver, failure to assert the right makes it difficult for Appellant to prove he was denied a speedy trial. *Harris,* 827 S.W.2d at 957.

In other words, Appellant's lack of a timely demand for a speedy trial indicates that he did not vigorously pursue a speedy trial. *Id.* Because Appellant did not persistently assert his right to a speedy trial, we do not weigh this factor heavily in his favor.

### 4. Prejudice

■ Finally, we must determine whether Appellant suffered prejudice as a result of the delay. Although a showing of actual prejudice is not required, it is the defendant's burden to make a showing of prejudice. *Oliver v. State,* 731 S.W.2d 149, 159–60 (Tex.App.—Fort Worth 1987, pet. ref'd). A mere passage of time is not prejudicial and will not result in a denial of speedy trial. *Id.* at 160. Prejudice must be assessed in the light of the interests of defendants which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Harris,* 827 S.W.2d at 957. Appellant did not suffer oppressive pretrial incarceration because he was already incarcerated on other charges when he committed the instant offense. With regard to the undue anxiety factor, Appellant asserts that he produced unrefuted evidence of anxiety and concern over his length of incarceration at the March 17 hearing. When asked by the trial court whether he would like to go to trial the next week, Appellant told the trial court the following: "Well, it don't matter with me, you know. I mean, if not, you know, I mean, or I guess the sooner the better, I guess, because I've been here so long." We do not interpret Appellant's comments as evidencing any undue anxiety or unusual concern.

Appellant also asserts that his defense was impaired by the delay. His defense at trial was that other inmates had access to his cell and could have left the "shanks" on his nightstand. Appellant claims in very general terms that the delay hampered his ability to prepare and present this defense due to a lack of jail records,[2] inmate population

---

2. Appellant does not explain what type of jail records were unavailable to him due to the pas-

sage of time. Our review of the record reveals that Captain Richard Sexton of the Midland

changes, and the fading memories of jailers. However, he fails to adequately identify the evidence and witnesses allegedly denied him, or explain how the claimed unavailability of the evidence is attributable to the delay, or how any of the evidence is material to his defense. Further, he provides no references to the record where support for these assertions may be found. Although we are not obligated to search through the record in support of evidence which would support Appellant's contentions, we have reviewed the record in its entirety and found no such evidence. In the absence of any evidence substantiating his allegations, we cannot conclude that prejudice has been shown. *See Emery,* 881 S.W.2d at 709 (no prejudice shown where defendant's claim that he suffered the loss of certain records not supported by the record); *McCarty v. State,* 498 S.W.2d 212 (Tex.Crim.App.1973) (when the non-availability of a witness is the basis of the claim of prejudice, the appellant must show that the witness was unavailable at the time he was tried, the testimony that would have been offered was relevant and material to the defense, and that due diligence was exercised in an attempt to locate the witness for trial); *Jaile v. State,* 836 S.W.2d 680, 686 (Tex.App.—El Paso 1992, no pet.) (no prejudice shown in asserted unavailability of certain records where record did not reflect that appellant's inability to locate evidence was specifically due to delay); *Maddux v. State,* 825 S.W.2d 511, 517 (Tex.App.—Houston [1st Dist.] 1992), *rev'd on other grounds,* 862 S.W.2d 590 (Tex.Crim.App.1993) (fact that potential witness had either died or moved from the State during pretrial delay and that counsel was unable to locate another witness did not show prejudice to defendant where

there was no indication as to what witnesses would have testified).

After balancing the above factors, we conclude Appellant was not denied his right to a speedy trial. The State acted with reasonable diligence in bringing Appellant's case to trial, and the delay between arrest and trial, due to a crowded trial docket, was not unduly protracted.[3] Further, the delay caused no prejudice to Appellant. Accordingly, Appellant's first point of error is overruled.

## II. Sufficiency of the Evidence

Appellant contends in his second point of error that the evidence is insufficient to show that he possessed the deadly weapon because the evidence did not prove "physical possession." In Point of Error No. Three, he asserts that the evidence is insufficient to show that he concealed the deadly weapon. In reviewing the sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 159 (Tex.Crim.App.1991). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. The standard of review is the same for both direct evidence and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158. Further,

County Sheriff's Office appeared pursuant to a *subpoena duces tecum* issued by Appellant. He brought with him jail records showing the results of all "shake-downs" in the jail for 1991 through the time of trial in 1994, including whether weapons were found. While those records did not reflect the identity of the inmate who had the weapon, Sexton testified that the Sheriff's Office entered into every inmate's record a report showing every occasion that the inmate was found in possession of a weapon, and that those records were not destroyed. He specifically testified that those records were permanently maintained by the Sheriff's Office.

3. While we join the dissent in his concern for the public's interest in a speedy trial and the necessity for additional courts, we recognize that only the legislature is empowered to cure the ills of overcrowded dockets. In addressing the speedy trial issue in the context presented, we note that Appellant was already incarcerated on other charges at the time of his indictment and during the entire eleven months of his pretrial confinement. The taxpayers of Midland County suffered no additional financial burden due to the delay. Society's interests have thus not been unduly harmed.

because the trial of this case occurred after the decision in *Geesa*, we do not apply the reasonable hypotheses construct to examine the circumstantial evidence. *Geesa*, 820 S.W.2d at 163–65.

The indictment, omitting the formalities, alleged that Appellant:

[W]hile confined in a penal institution, to-wit: the Midland Central Detention Center, did then and there intentionally and knowingly possess and conceal a deadly weapon, to-wit: a toothbrush with one end sharpened to a point which said toothbrush was manifestly adapted for the purpose of inflicting death or serious bodily injury;

. . . .

While the indictment alleges a violation of former Section 46.11(a)(2) of the Penal Code in the conjunctive,[4] the trial court properly submitted the two methods of committing this offense to the jury in the disjunctive. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991). Consequently, if a rational trier of fact could find either manner and means of committing the offense, that is, possession or concealment, the evidence would be sufficient to sustain the conviction. *See Ortega v. State*, 668 S.W.2d 701, 707 (Tex.Crim.App.1983); *Love v. State*, 730 S.W.2d 385, 400 (Tex.App.—Fort Worth 1987, no pet.).

We will first determine whether the evidence is sufficient to show that Appellant possessed the deadly weapon. The evidence at trial, when viewed in the light most favorable to the verdict, reflects that Appellant was incarcerated in the Midland Central Detention Center on the day of this offense. At approximately 7 a.m. on April 12, 1993, Deputy Alan Thompson, a jailer, testified that as he performed the routine head count and roll call, he noticed that Appellant had placed paper over the emergency light on the ceiling, thereby dimming the light in the cell. The emergency light stays on twenty-four hours a day and operates even in the event of a power outage. On the two previous days, Appellant had covered the light in the same manner, but had removed the paper upon Thompson's request. On this morning, however, Appellant refused to remove it. Thompson entered the cell to remove the paper. Appellant, who had been standing by the door, walked over to the bed and sat down next to the nightstand which had papers and a milk carton from breakfast on it. Thompson, noticing that Appellant looked furtively at the nightstand, ordered Appellant to move so that he could step up onto the nightstand. Thompson then removed the paper from the light. Upon stepping down, Thompson saw several pills on the nightstand in violation of a jail rule which prohibited inmates from hording medicine. In confiscating the pills, Thompson moved a piece of paper and saw the point of a "shank" sticking out from under the papers.

Thompson testified that the shank had been made from a toothbrush. The handle portion of the toothbrush had been ground into a sharp point, while the bristle end had been wrapped with strips of a T-shirt to form a handle. The weapon also had a string attached to it that could be used to wrap around the wrist so that the knife would not be lost if dropped in a fight. Thompson instructed Appellant to stand against a wall and immediately confiscated the weapon while he called Deputy Brian Webb to assist him. Thompson and Webb decided to place Appellant in a segregated cell area referred to as "separation" which is used for disciplinary action. Thompson told Appellant that he was being transferred to "separation" and ordered him to gather his belongings, which included not only jail-issued items, but also his personal possessions. After Appellant finished packing his belongings in a plain brown paper bag, Thompson and Webb took him out of the cell into a secured area. They ordered Appellant to put his hands against the wall and they performed a pat-down

---

4. Appellant was tried prior to the effective date of the 1994 recodification of the Penal Code. Former Section 46.11(a)(2) provides that a person commits an offense if, while confined in a penal institution, he intentionally, knowingly, or recklessly possesses or conceals a deadly weapon in the penal institution. The 1994 amendment of the Penal Code did not substantively change this statute, but merely renumbered it as Section 46.10(a)(2). *See* Tex.Penal Code Ann. § 46.10(a)(2) (Vernon 1994). We will cite to former Section 46.11(a)(2) throughout the remainder of this opinion.

search of his outer clothing. In searching through the paper bag, Thompson found another shank. He said that the bag contained envelopes, papers, a T-shirt, and some of Appellant's "other stuff."

At the time the shanks were discovered, Appellant had not had any cellmates for at least two days. Although an inmate can request to leave or enter his cell, the cell doors can be opened only by the jailers. Under the jail's rules, the inmates' cell doors were to remain locked at all times, although prisoners occasionally did not close the doors when they entered or left their cells. After seeking permission of the control room, other inmates could enter Appellant's cell if he did not object. Appellant presented no evidence that other inmates had, in fact, been in his cell prior to the instant offense.

Because this is a possessory offense, the State was required to prove that Appellant knew of the weapon's existence and that he exercised actual care, custody, control, or management over it. *See Young v. State*, 752 S.W.2d 137, 139–40 (Tex.App.—Dallas 1988, pet. ref'd); *Vela v. State*, 681 S.W.2d 739, 740 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd); TEX.PENAL CODE ANN. § 1.07(a)(39) (Vernon 1994) ("Possession" means actual care, custody, control, or management).[5] In analyzing sufficiency of the evidence to show possession, both *Young* and *Vela* apply the affirmative link analysis. *Young*, 752 S.W.2d at 139–40; *Vela*, 681 S.W.2d at 740. However, that analysis applies only when the accused is not in *exclusive* possession of the *place* where the contraband is found, so that it cannot be concluded that the accused had knowledge of or control over the contraband, unless there are additional independent facts and circumstances which affirmatively link the accused

to the contraband. *See Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Flores v. State*, 650 S.W.2d 429, 430 (Tex.Crim.App. 1983); *Musick v. State*, 862 S.W.2d 794, 804 (Tex.App.—El Paso 1993, pet. ref'd). Since Appellant was in exclusive possession of his jail cell at the time of this offense, we will not apply the affirmative link analysis to our sufficiency review.[6]

Inconsistent with the statutory definition of possession, Appellant contends that the evidence is insufficient because he was not in "physical possession" of either shank. The cases he cites, namely, *Graybill v. State*, 601 S.W.2d 353 (Tex.Crim.App.1980), *Berry v. State*, 833 S.W.2d 332 (Tex.App.—Waco 1992, no pet.), and *Thomas v. State*, 801 S.W.2d 540 (Tex.App.—Houston [14th Dist.] 1990), *rev'd*, 821 S.W.2d 616 (Tex.Crim.App.1991), do not support this proposition. Both *Berry* and *Thomas* involved only the question of whether the evidence was sufficient to show that a particular shank was a deadly weapon. Neither case stands for the proposition that the State was required to prove "physical possession" in order to obtain a conviction. In *Graybill*, the Court of Criminal Appeals held only that the defendant was entitled to a charge on circumstantial evidence where the evidence showed that the defendant was not in physical possession of the weapon found under a motel room bed, the motel room in which the weapon was found was not registered in the defendant's name, and the defendant was not alone in the room. *Graybill*, 601 S.W.2d at 353–55. This case is distinguishable. Even though the evidence did not show that Appellant was in physical possession of the weapons, he had sole and exclusive possession of his cell and the weapon was found amongst his personal possessions.

---

**5.** We cite to the present statute for convenience. However, we note that the definition of possession was formerly found at Section 1.07(a)(28).

**6.** Since the demise of the reasonable hypothesis construct in *Geesa*, the Fort Worth and Beaumont Courts of Appeals have held that the affirmative link concept no longer controls the sufficiency analysis in possession cases. *Brown v. State*, 878 S.W.2d 695, 699 (Tex.App.—Fort Worth 1994, pet. granted); *Eaglin v. State*, 872 S.W.2d 332, 336–37 (Tex.App.—Beaumont 1994, no pet.). Despite the fact that the affirmative

link analysis is a method of review which served the purpose of excluding reasonable hypotheses other than the guilt of the accused, other courts have found it to have continuing viability. *Villarreal v. State*, 865 S.W.2d 501, 503 n. 1 (Tex. App.—Corpus Christi 1993, pet. ref'd); *Williams v. State*, 859 S.W.2d 99, 101 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Due to the posture of this case, however, we need not decide whether we will continue to employ the affirmative link analysis.

Furthermore, the prior law concerning circumstantial evidence as it applied to jury instructions or sufficiency review has no application here.

We find the evidence sufficient to show that Appellant possessed both weapons. Appellant was the sole occupant and had exclusive possession of his jail cell at the time both shanks were found. Both shanks were found intermingled with his personal possessions. After Thompson entered the cell, Appellant moved over to the bed, sat next to the bedside table, and glanced furtively in that direction even though the weapon was covered from Thompson's view by the papers. The evidence also permits an inference that Appellant placed the second shank in the paper sack along with his other possessions when told that he was being transferred to segregation. As further evidence of his guilty knowledge, Appellant refused Thompson's request to remove the paper covering the ceiling light. Under these circumstances, a rational trier of fact could conclude that Appellant had knowledge of the existence of both weapons and exercised control over them. *See Patterson v. State,* 723 S.W.2d 308, 312 (Tex.App.—Austin 1987), *aff'd,* 769 S.W.2d 938 (Tex.Crim.App.1989) (defendant's proximity to contraband, commingling of his personal belongings with contraband on table top, and possession of loaded concealed weapon of caliber matching that of ammunition mixed with contraband provided sufficient evidence to permit inference of knowing possession of controlled substance); *see also Hazel v. State,* 534 S.W.2d 698, 700 (Tex. Crim.App.1976) (proof that a pistol was found on the floorboard of an automobile, partially under the driver's seat, is sufficient to establish possession of the weapon by the driver). Point of Error No. Two is overruled. Because the evidence is sufficient to show possession of the deadly weapon, it is unnecessary for us to consider whether the evidence is also sufficient to show that Appellant concealed the deadly weapon. Accordingly, we do not address Point of Error No. Three.

Having overruled Points of Error Nos. One and Two, the judgment of the trial court is affirmed.

CHEW, Justice, dissenting.

I respectfully dissent. The majority excuse the delay of trial in this case after a thorough and thoughtful inquiry. I would not be so patient for two reasons. I explain the second, first.

First, the right to a speedy trial is clearly a fundamental right; contained within the Magna Carta, the bill of rights of the first colonies, and in every constitution of the fifty states. Yet, our application of this fundamental right can apparently only be applied by the application of a mechanical formula immediately weighted in favor of the State.

Second, we ignore the "social interest[s] in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Barker v. Wingo,* 407 U.S. at 519, 92 S.Ct. at 2186. In this case, the Appellant suffered eleven months of pretrial confinement, but so did the taxpayers of Midland County who paid for each day of those eleven months. Doesn't the public also have a stake in seeing that justice is timely and not delayed? I believe that the community also has an interest and right to a speedy trial.

Relief from overcrowded dockets must eventually come from the legislature to authorize new courts, but meanwhile, the courts must seek interim remedies, there being many to avoid the only remedy this Court may impose—dismissal, to avoid the kind of trial delay suffered here.