Thomas Gardner WALDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 57211.

Court of Criminal Appeals of Texas,
Panel No. 1.

April 18, 1979.

Kerry P. Fitzgerald, Dallas, for appellant.

Arthur C. Eads, Dist. Atty. and James T. Russell, Asst. Dist. Atty., Belton and Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and W. T. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This an appeal from a conviction for possession of more than four ounces of marihuana, wherein the jury assessed punishment at five years in the Department of Corrections and a $5,000.00 fine.

At the outset the appellant challenges the sufficiency of the evidence.

This case involves the same transaction as that discussed *Gaffney v. State*, Tex.Cr. App., 575 S.W.2d 537, and the same preliminary facts were adduced at the trial of appellant. Part of the statement of facts from that opinion is quoted here.

For some time prior to April 28, 1976, Officer Severn of the D.P.S. Intelligence Service was in contact with a confidential informant concerning other controlled substance transactions. In the course of these discussions, the instant transaction was revealed in general terms. Then, on April 28, 1976, between 9 and 10 a. m., the confidential informant advised Officer Severn that a load of marihuana was to be flown into the Terrell, Kaufman County, Texas, airport that night, around midnight, from Mexico. The make and identification number of the plane were provided, as was the pilot's name. Officer Severn related this information to D.P.S. Narcotics Officer Spencer. At approximately 9:30 p. m., Officers Severn and Spencer arrived at the Terrell airport to maintain surveillance and seize the smuggled contraband when it arrived. At approximately 11:30 p. m., Officer Severn contacted his informant, who had previously provided reliable information, and was advised that due to inclement weather the airplane was diverted to the Temple, Bell County, Texas, airport. The informant described the vehicles, their license numbers, and their drivers' names which were en route to rendezvous with the plane by way of Interstate 35. Officer Severn set out towards Temple while Officer Spencer related all the information to the Waco regional office of the D.P.S.

D.P.S. Narcotic Agent Aycock received Officer Spencer's phone call around 12:05 a. m. on April 29. He was advised of the recent developments, . . . [and to be on the lookout for a 1975 Chevrolet Blazer, license number EV4103 and a 1976 blue Chevrolet pickup truck with a light camper, license number ER5181 in route from Dallas to the Temple airport.] . . . At 12:15 a. m. Agent Aycock advised Agent Mayben of the Temple office of this same information. Mayben in turn requested assistance of the Temple City Police Department. At 12:35 a. m. Agent Aycock proceeded to the Hewitt Exit South on I.H. 35 to look for the motor vehicles which were observed at 1:15 a. m. travelling at about 80 to 85 miles per hour. Surveillance of these vehicles was maintained from this point,

. . .

At approximately 1 a. m. and prior to the arrival of the vehicles at the Temple airport, several officers proceeded immediately to the airport terminal where one of the officers entered the terminal area and observed the night watchman and the appellant who was seated in the terminal facing toward the airplane parking area of the airport. The "suspect plane" was parked in the back parking area of the terminal at this time.

Surveillance of the terminal area then began from a nearby cemetery and was aided by the use of binoculars.

The vehicles entered the airport at about 1:30 a. m. The Blazer vehicle entered the

road to the airport, made a U-turn and parked facing the highway. The pickup proceeded to the terminal, momentarily stopped and then continued from the front of the terminal around to the side and to the back of the terminal in the area where various airplanes were parked. The suspect aircraft was in the area at that time and parked in a northernly direction and was the only such airplane parked in that direction. Movement of more than one unidentifiable person was observed at this time as if something was being carried from the airplane to the pickup truck. Within about 15 minutes, the pickup left the area and eventually travelled toward the Blazer and then both vehicles proceeded toward the entrance gate where they were stopped by law enforcement authorities.

The record reflects that both vehicles were searched. Thirty one packages containing 572 pounds of marihuana were found in the pickup camper and its driver and sole occupant, Michael Gaffney, was arrested. A ground-to-air radio was also found in the pickup. This Court recently affirmed Gaffney's conviction for possession of more than four ounces of marihuana. *Gaffney v. State*, supra.

The driver of the Blazer, Dan Wilkes, was also arrested, along with the appellant who was in the passenger's seat of the Blazer. No marihuana was found in the Blazer or on the person of Wilkes or the appellant. Several maps of Mexico, a transmitter, a following device detector, rental receipts inside a flight bag, and what was purported to be the appellant's driver's license and some of his clothing, as well as seats from the suspect plane, were found in the Blazer.

A key was taken from the appellant to open the door of the suspect plane. A search of the plane disclosed "marihuana sweepings" which amounted to .25 grams of marihuana.

The record also reflects that a Mr. Lallier in April of 1976 was vice-president of High Performance Aviation in Dallas and had occasion to lease an aircraft to one "Tom Waldon" during the latter part of April 1976. Subsequently, the aircraft was seized by the Department of Public Safety. Lallier did not see the "Tom Waldon" fly the airplane off and could not identify the appellant in open court as the "Tom Waldon" in question.

This Court recently reversed the conviction of Dan Wilkes, the driver of the Blazer in which appellant was a passenger when arrested, on the insufficiency of the evidence linking Wilkes to the contraband in the other vehicle. The question presented by appellant is whether (1) his presence at the airport terminal with (2) the key seized from him and which unlocked the plane in question, (3) combined with evidence that he rented the plane, is sufficient evidence beyond that adduced in *Wilkes*, supra, to affirmatively link him to the marihuana in the camper truck. Although the evidence amounts to a strong suspicion and even probability that the appellant was guilty of the offense charged, the Legislature, Article 4476–15, Section 4.05(a), V.A.C.S., and the prior holdings of this Court mandate that we find the evidence insufficient as a matter of law.

Possession of the contraband need not be exclusive and evidence which shows the accused jointly possessed the contraband with another is sufficient. *Martinez v. State*, Tex.Cr.App., 539 S.W.2d 885; *Woods v. State*, Tex.Cr.App., 533 S.W.2d 16; *Curtis v. State*, Tex.Cr.App., 519 S.W.2d 883, and cases cited therein. However, a finding of joint possession cannot be justified solely by proof of mere presence of an accused at a place where contraband is being used or possessed. *Ayers v. State* Tex. Cr.App., 570 S.W.2d 926; *Brooks v. State*, Tex.Cr.App., 529 S.W.2d 535; *Harrison v. State*, Tex.Cr.App., 555 S.W.2d 736. Whether the theory of prosecution is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and of its whereabouts. *Hernandez v. State*, Tex.Cr.App., 538 S.W.2d 127; *Curtis v. State*, supra; *Payne v. State*, Tex.Cr. App., 480 S.W.2d 732. This affirmative link

is established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Long v. State*, Tex.Cr.App., 532 S.W.2d 591; *Hineline v. State*, Tex.Cr.App., 502 S.W.2d 703.

■ The evidence does not directly link the appellant to the contraband. It ties appellant into the plane in general, but not specifically at the time in question. There is no evidence that he flew the plane, that he landed it at the Temple airport, that the plane's flight log or the log of the Temple airport ever reflected appellant as flying the airplane or being near it at any time. Assuming, however, that the key tied him to the airplane in which .25 grams of marihuana was found, there is not evidence to link him or Wilkes to the amount of marihuana over four ounces found in the other vehicle. The police first observed appellant in the terminal building sitting by himself. He was next observed as a passenger in the Blazer.

Granted that there are highly suspicious facts here, the State has failed to prove the requisite affirmative link between the contraband in question and the appellant.

■ It is also well established that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient. *Stogsdill v. State*, Tex.Cr.App., 552 S.W.2d 481; *Flores v. State*, Tex.Cr.App., 551 S.W.2d 364; *Easley v. State*, Tex.Cr.App., 529 S.W.2d 522; *Indo v. State*, Tex.Cr.App., 502 S.W.2d 166. This is especially significant when the night watchman was in the terminal area with a view of the runway and plane parking area and could have shed light on the missing facts of this case.

■ Where circumstantial evidence relied on by the prosecution is somewhat weak and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellant court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *Schershel v. State*, Tex.Cr.App., 575 S.W.2d 548; *King v. State*, Tex.Cr.App., 396 S.W.2d 409; 24 Tex.Jur.2d 427, Evidence, Section 745.

■ Given our disposition of this ground of error, we decline to discuss appellant's other grounds of error. Having found that reversal must result in the instant case, we further conclude that no prosecution be had in this cause. The Double Jeopardy Clause of the United States Constitution precludes a second trial once the reviewing court has found the evidence legally insufficient. *Burks v. U.S.*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. This ruling is fully applicable to State Court proceedings, *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15.

The conviction is set aside and reformed to show acquittal.

For the reasons stated, the judgment is reversed and the cause remanded.