**Charles Edward MACK, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. C14–84–111CR, C14–84–112CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 25, 1984.

Larry Urquhart, Moorman, Tate, Moorman & Urquhart, Brenham, for appellant.

Calvin Hartmann, Asst. Dist. Atty., Houston, for appellee.

Before JUNELL and SEARS, JJ., and T. GILBERT SHARPE, J. (Retired).

## OPINION

JUNELL, Justice.

This is an appeal from two murder convictions tried jointly before a jury. The jury assessed punishment at 35 years. In his first ground of error appellant asserts that the trial judge abused his discretion by refusing to let the defense impeach a state witness with a felony conviction outside the ten-year rule. Appellant urges in his second ground of error that the circumstantial evidence was insufficient to support the convictions. Finding no error we affirm the convictions.

The state's primary witness, Frank Gibson, had been with appellant the night of the murders and drove appellant to the scene of the crime. Gibson admitted at a hearing on the state's motion in limine that he had been convicted in June of 1965 for assault with intent to rape and robbery by assault. He was sentenced to twenty-five years confinement and released from prison on August 22, 1973. He testified December 13, 1984, approximately eleven years and four months after release. Appellant acknowledges that a prior felony conviction of a witness is admissible for impeachment purposes if not too remote and that the question of remoteness is largely a matter within the discretion of the trial court. The general rule of thumb is that a conviction is remote if the witness had been released from prison ten years or more prior to the time of testimony. *Taylor v. State,* 612 S.W.2d 566 (Tex.Crim.App. 1981). Appellant urges that the court should not have applied the general rule of thumb because the witness's status as a convicted felon could have motivated him to cooperate with the police. If the witness had been tried for the murders, he faced the possibility of an enhancement charge. The court of criminal appeals has rejected this contention in *Spriggs v. State,* 652 S.W.2d 405 (Tex.Crim.App.1983) (en banc). In *Spriggs* the defense wanted to bring up remote felonies because the witness was facing a pending indictment that did not contain an enhancement charge. The court held that the state's power to add the enhancement charge at any time did not establish a bias or motive for testifying against the defendant and did not warrant admission of the remote convictions. Appellant's first ground of error is overruled.

Appellant's second ground of error urges that the circumstantial evidence was insufficient to support the convictions. We find the evidence sufficient and overrule the second ground of error. The following summary of the evidence should explain our holding.

The state's main witness was Frank Gibson. Gibson testified that he picked up appellant and Joseph Woods while driving around in his wife's car. They drove first to a party at a nightclub nearby and then left to search for a homosexual to "roll." The search was unsuccessful and the three headed home in the early morning hours. On the way home Gibson stopped at a Stop-N-Go drive-in market on Broadway Street to buy cigarettes. Appellant and Woods left the car, and Gibson slumped down in the front seat and closed his eyes to rest. While he waited in the car, he heard shots fired and the appellant and Woods came running back to the car. Gibson refused to let them in the car. The two left on foot down Broadway while Gibson drove away. Gibson waited until the two had time to walk home and drove down the street where appellant lived. He saw appellant and Woods and asked what had happened. Appellant told him "he had got into it with some Mexicans."

Another key witness was Sherry Lacy. Lacy was spending the night in an apartment in a complex near the Stop-N-Go on Broadway. In the early morning of June 5, 1983, she and her two-year-old niece walked to the Stop-N-Go to buy cigarettes. The Stop-N-Go is located in a strip mall. As she was leaving the store, she noticed that appellant was standing by the telephone three or four feet from the door and facing Broadway. Appellant was wearing jeans and a white T-shirt. She saw a bulge under the shirt that looked to her like a gun stuck into his waistband. Miss Lacy had been acquainted with appellant for five years and could recognize his voice. As she walked home along the front of other stores in the mall, she saw two Mexican men walking across Broadway. She heard appellant yell "Run mother _____" followed by four loud shots. She looked back to see one of the Mexican men run back toward Broadway and fall. The other man ran along the sidewalk behind her. She heard him fall onto the concrete. She was frightened and ran home. She did not call the police.

From testimony of Johnie Love, another state witness, it was established that on June 7, 1983, the appellant gave him a

short, nickel-plated .38 caliber revolver as collateral for a $25.00 loan. On the next Sunday appellant repaid the loan with interest ($31.25) and got the gun back. Tuesday morning appellant telephoned Love and said he was in trouble and wanted Love to help him out. Appellant said that the gun "had been involved." If anyone asked Love about the gun, appellant wanted Love to say it was a smaller caliber pistol.

Other testimony from investigating police officers and a forensic pathologist revealed that two Latin American males, Candido Mesa Cabrera and Jesus Mesa Alcantar, were found dead outside the Stop-N-Go June 5, 1983. The pathologist was of the opinion that both died of gunshot wounds to the back. A .38 caliber bullet was recovered from the body of Candido Mesa Cabrera. Jesus Mesa Alcantar was wounded in the ring finger of the right hand, palm side. Soot around the wound indicated that the muzzle of the gun was within six inches of the hand when fired. Strippling was found around the back entrance wound of Jesus Mesa Alcantar indicating that the gun was fired within twenty-four inches of the victim. A firearm expert testified that the .38 caliber bullet recovered from Candido Mesa Cabrera came from a revolver as opposed to a semiautomatic gun.

Appellant contends that the state's circumstantial evidence was weak and left open the reasonable hypotheses that Joseph Woods or Frank Gibson fired the fatal shots that night. Citing *Routon v. State*, 589 S.W.2d 700, 704 (Tex.Crim. App.1979) and *Waldon v. State*, 579 S.W.2d 499 (Tex.Crim.App.1979), appellant places special emphasis on the fact that the state did not call Woods to the stand or offer an explanation for failure to do so. We do not find *Routon* or *Waldon* controlling because the state's evidence is not weak. We recognize that the reasonable hypotheses test is still to be utilized in deciding sufficiency of the evidence on appeal. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim. App.1983) (on rehearing en banc). We hold that the jury could have reasonably elimi-

nated Joseph Woods and Frank Gibson as the ones who fired the shots because Sherry Lacy saw only appellant at the spot from which the shots were fired. She also knew Woods and Gibson but saw neither that night.

The convictions are affirmed.