COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
| --- | --- | --- |
| NOEL DEVON KING, | | No. 08-08-00112-CR |
|  | § | |
| Appellant, | | Appeal from |
|  | § | |
| v. | | 283rd District Court |
|  | § | |
| THE STATE OF TEXAS, | | of Dallas County, Texas |
|  | § | |
| Appellee. | | (TC # F-0674261-T) |
|  | § | |

**O P I N I O N**

Noel Devon King was charged by indictment with possession of marijuana in cause number F-0674261-T.[1]  The offense was enhanced by two prior felonies:  unauthorized possession of a firearm by a felon and robbery.  A jury found Appellant guilty of the marijuana charge, and the trial court assessed punishment at twenty years' confinement.  For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

At about 9 p.m. on December 31, 2006, Officers Kevin Green and Calvin Cross of the Dallas Police Department were working patrol in south Dallas when they encountered a red, four-door Cadillac driving eastbound on Hatcher without its headlights illuminated.  Officer Green blinked his headlights multiple times in an attempt to signal the driver.  Instead of turning on the headlights, the driver made a U-turn and passed the  squad car as it traveled west on Hatcher.  At that time, the

---

[1] Appellant was also charged by indictment with possession of cocaine with intent to distribute in cause number F-0674262-T and with escape in cause number F-0674263-T.  Appellant was sentenced to confinement for twenty-five years in the former and for twenty years in the latter.  Appellant also appeals both of these convictions and we have addressed them as companion cases.  *See David Norris Alexander v. State*, 08-07-00280-CR, 2009 WL 2634482 (Tex.App.--El Paso Aug. 26, 2009, no pet.).  He has filed a unitary brief raising four issues for review.  Issue One addresses only the conviction for possession of marijuana.  Issue Two addresses only the conviction for possession of cocaine.  And Issues Three and Four relate only to the conviction for escape.

officers activated their flashing lights and attempted to perform a traffic stop.

The Cadillac did not immediately pull over. The driver entered the service road for the S.M. Wright freeway. The Cadillac stopped in an apartment complex, in what Officer Green characterized as a high crime, drug area. Appellant attempted to exit the vehicle, but he complied when Officer Cross yelled for him to get back in the car. Officer Green approached the driver's side and Officer Cross approached the passenger side. There was one passenger in the front seat. Officer Green identified himself and asked why Appellant was driving without his headlights. Appellant did not answer. When the officer asked to see a driver's license and proof of insurance, Appellant said that he did not have a driver's license Before Officer Green could determine whether Appellant had insurance, Officer Cross signaled for him to go towards the back of the vehicle. Officer Green went around the car and looked into the backseat, while Officer Cross moved to the driver's side.

When Officer Green saw Appellant reach into a bag in the back, he pulled his duty weapon and ordered the occupants of the car to put their hands where he could see them. Officer Green removed the passenger and placed him in handcuffs, but Appellant exited the vehicle, pushed Officer Cross, and took off running. The officers chased him through the apartment complex. They caught up with him and tried to restrain him, but Appellant punched, threw his arms around, and struggled with the officers on the ground until Officer Green used his OC spray. The spray affected everyone, but the officers were able to place Appellant in custody for evading and resisting arrest. The passenger of the vehicle had run away by the time the officers returned to the squad car but was subsequently arrested for active warrants. While Officer Green and Officer Cross received medical attention, Officer Brian Emerson performed an inventory search of the Cadillac.

Officer Emerson personally observed an unzipped blue duffel bag in the backseat of the Cadillac. It contained eight knotted bags of marijuana in a Ziploc bag as well as numerous

"organized, pre-packaged" Ziploc baggies of marijuana in various sizes and colors. Both the blue bag itself and an Altoids tin found inside the bag contained marijuana residue. Officer Emerson also found a yellow piece of paper that appeared to be "a pawn shop slip or something like that," an electric bill, and two envelopes. A black toiletry bag inside the duffel bag contained an electrical scale with cocaine residue on it, small individual vials commonly used for the drug PCP, an eye dropper, a small baggie with cocaine residue on it, a medicine bottle, and a red cigarette box. Additionally, Officer Emerson found a shoe box next to the duffel bag containing bottles of hydrocodone, a prescription cough syrup; what appeared to be a crack cocaine cookie; a small, clear sliced pimento jar; a Crown Royal bag containing Ecstasy tablets; and a small plastic bag containing small yellow baggies of crack cocaine. The field test performed by Sergeant Arnold Brown positively identified the cookie as crack cocaine.

Officer Jeremiah Torrez was assigned to watch Appellant in the backseat of a squad car during the inventory search of the car. At one point, Appellant maneuvered the handcuffs up over himself and tried to escape from the squad car, but Officer Torrez pulled him out of the car, re-handcuffed him, and placed him back in the car. When Officer Torrez turned his attention to Officer Green, Appellant took off running. The officers pursued him on foot. Appellant did not immediately comply when he was caught; he kicked and flailed, and said that he had AIDS and other diseases. Once the officers secured Appellant, he was placed in a different squad car and transported to jail. Officer Torrez found a loaded semi-automatic handgun with a bullet in the chamber fifteen to twenty feet away from the original struggle between Appellant and the officers.

Julian Aguilar of the Southwest Institute of Forensic Science testified about the results of the laboratory testing of the substances found by the officers. The total amount of cocaine found in the car, including adulterants or dilutants, was 59.0 grams. The medicine bottle contained 304 grams

of codeine and promethazine. The total weight of the marijuana found in the car was 1.19 pounds.

Officer Barry Ragsdale described what crack cocaine is and how it is made, packaged, and distributed. Because the average quantity of cocaine is one-tenth of a gram and generally costs $10 on the street, 59 grams of cocaine would be worth $5,900. The baggies of marijuana would sell for between five and ten dollars each. Ragsdale explained that Crown Royal bags are often used to conceal drugs and money. He testified that the small yellow bags of crack cocaine were packaged for resale. The presence of small glass vials and an eyedropper indicated that "somebody is going to package up phencyclidine, PCP," and the cough syrup is often sold in small jars like the pimento jar. The scale found in the car was used to weigh drugs. In a response to a hypothetical, Officer Ragsdale concluded that the facts indicated someone was operating a "poly drug operation," meaning selling more than one type of drug. He expressed his expert opinion that the cocaine was possessed with the intent to distribute and the marijuana was packaged for resale, not personal consumption.

Appellant testified that on the day of the alleged offense, he had been playing video games with friends. They decided to go to Club Blue that evening. Because he wanted to be seen driving a better looking car than his own, he asked his former girlfriend, Cynthia Colbert, if he could borrow her Cadillac. On their way to the club, the men stopped at an address on Hatcher to pick up their friend, Corey. Appellant turned the headlights off because they were shining on the house. Corey had apparently already left, so Appellant made a U-turn to head back toward the highway. He forgot to turn his headlights back on. As he was about to reach the highway, the police stopped him. He did not see the police flash their lights at any point, but only realized they wanted to stop him when their top lights were activated.

Appellant did not pay attention to what items were in the Cadillac. He explained to the officer that he did not have a driver's license, and looked in the glove compartment to find the

insurance papers. As he reached into it, some papers fell out, including those found later by the police. Appellant was unable to find proof of insurance. He was then asked what was inside the duffle bag. He reached back into the bag because he did not know what was in it. He claimed he had not put anything into the bag nor taken anything out.

Appellant complied when he was asked to step out of the car. When he heard the officer tell his partner about the bag, he was afraid because he had a criminal background. He panicked as he was being patted down and took off running. When the officers caught up with him, one "tackled" him and "choked [him] down" while the other "put him in restraints" and handcuffed him. The officers then sat him on the curb while they looked through the bag. Appellant then got up and ran again, with his hands still behind his back. When Officer Green caught up to him, Green said, "I got you now," and then hit him in the mouth. Mace and tasers were used to subdue him and he was slammed to the ground as the rest of the officers "joined in" and were kicking him. Appellant testified that one of the officers yelled, "Hit him again. Hit him again." Another officer bit him. Appellant was then placed in another squad car. Because one of the officers had bitten him, Appellant shouted that he had AIDS and tuberculosis and that they were going to get a disease.

On cross-examination, Appellant admitted that he could smell the marijuana in the courtroom, but said he did not know there was marijuana in the car. He admitted that the little pieces of cocaine in the baggies were for sale, that the crack cocaine cookie contained a large, wholesale amount of cocaine, and that the little vials were used for PCP. Appellant claimed that he brought the pills to give to his friend for a venereal disease. Additionally, the yellow piece of paper with his name on it was a receipt for stereo equipment he had purchased that morning and it was located in the divider between the driver and passenger seats, not in the bag.

**FACTUAL SUFFICIENCY**

In Point of Error One, Appellant challenges the factual sufficiency of the evidence to support his conviction for possession of marijuana. We begin with the standard for review.

*Standard of Review*

When conducting a factual sufficiency review, we view all of the evidence in a neutral light. *Cain v. State*, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). We will set the verdict aside only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). Under the first prong of *Johnson*, we cannot say that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit, had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution. *Id*. Before finding that the evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. In conducting our factual sufficiency review, we must also discuss the evidence which Appellant claims is the most important in allegedly undermining the finding. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). We defer to the fact finder's determination of witness credibility and the weight given to the evidence. *Cleveland v. State*, 177 S.W.3d 374, 388 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006).

*Possession*

To prove possession of marijuana, the State must necessarily prove that the accused exercised care, control, and management over the marijuana, and that he knew he was in possession of the

contraband. *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988). Possession involves more than simply being where the action is; it requires exercise of dominion and control over the thing allegedly possessed. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). Evidence must affirmatively link the accused to the contraband by evidence indicating knowledge and control. *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App--El Paso 1995, pet. ref'd), *citing Waldon v. State*, 579 S.W.2d 499, 501 (Tex.Crim.App. 1979). The burden of establishing affirmative links rests upon the State. *Menchaca*, 901 S.W.2d at 651, *citing Damron v. State*, 570 S.W.2d 933, 935 (Tex.Crim.App. 1978). Proof of knowledge is an inference drawn by the jury from all circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Knowledge may arise from the conduct of and remarks by the accused or from circumstances surrounding the acts engaged in by the accused. *Sharpe v. State*, 881 S.W.2d 487 (Tex.App.--El Paso 1994, no pet.).

An affirmative link, which may be shown by either direct or circumstantial evidence, "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Factors that may affirmatively link the accused to contraband include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special

connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). Any list of affirmative links is non-exclusive. *Castellano v. State*, 810 S.W.2d 800, 805 (Tex.App.--Austin 1991, no pet.). The logical force the factors play in establishing the elements of the offense is more important than the number of factors involved. *See Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.--Texarkana 1998, pet. ref'd).

Appellant relies upon *Humason v. State*, 728 S.W.2d 363 (Tex.Crim.App 1987), *partially overruled on other grounds by Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991), to support his argument. There, a bag containing cocaine was in close proximity to the defendant and was unzipped. *Id*. at 364. The court found the evidence insufficient to support a conviction for possession of the cocaine. *Id*. at 367. The court's ruling was based on the fact that there was no evidence that the defendant had sole access to the truck, that the cocaine was in plain view, or that the defendant was aware that the substance was cocaine. *Id*.

*Analysis*

The State established affirmative links showing that Appellant's connection with the drugs was more than just fortuitous. Appellant was present in the car, an enclosed space, with one other person when the officers pulled him over. The officers observed a blue duffel bag "wide open, full, unzipped" with marijuana coming out of it in plain view in the backseat. The shoe box containing the cocaine was found next to the duffle bag. The drugs were accessible to Appellant and in very close proximity to the driver's seat. The bag was close enough for him to reach into it during the initial stop. The officers found 59.0 grams of crack cocaine and 1.19 pounds of marijuana  In

addition to the large quantities of crack cocaine and marijuana, the officers also found drug paraphernalia and prescription medication in Appellant's name. Moreover, Appellant's repeated attempts to flee the scene suggest consciousness of guilt.

We also find this case distinguishable from *Humason*. 728 S.W.2d at 363. The cases are similar in that the officers found an unzipped bag next to the defendants. But unlike *Humason*, there are numerous other factors here which affirmatively link Appellant to the duffle bag. Humason was not caught reaching into the bag when pulled over. There were no papers with his name found within the bag. And Humason did not try to escape once he was confronted by the officers. Those factors are present here, and ultimately led the jury to find an affirmative link between the Appellant and the seized contraband. We defer to the fact finder's determination of witnesses' credibility and of the weight given to the evidence. *Cleveland*, 177 S.W.3d 388.

Viewing all of the evidence in a neutral light we conclude that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d 11. Because the evidence was factually sufficient to support the conviction for possession of marijuana, we overrule Point of Error One. The judgment of the trial court is affirmed.

April 14, 2010

_____
ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)