COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





NOEL DEVON KING,

                                    Appellant,

v.

THE STATE OF TEXAS,

                                    Appellee. 

§
 
§
 
§
 
§
 
§

§


No. 08-08-00112-CR

Appeal from
 283rd District Court

of Dallas County, Texas

(TC # F-0674261-T)



 

 

 




O P I N I O N

            Noel Devon King was charged by indictment with possession of marijuana in cause number
F-0674261-T.


 The offense was enhanced by two prior felonies: unauthorized possession of a
firearm by a felon and robbery. A jury found Appellant guilty of the marijuana charge, and the trial
court assessed punishment at twenty years’ confinement. For the reasons that follow, we affirm.
FACTUAL BACKGROUND
            At about 9 p.m. on December 31, 2006, Officers Kevin Green and Calvin Cross of the Dallas
Police Department were working patrol in south Dallas when they encountered a red, four-door
Cadillac driving eastbound on Hatcher without its headlights illuminated. Officer Green blinked his
headlights multiple times in an attempt to signal the driver. Instead of turning on the headlights, the
driver made a U-turn and passed the squad car as it traveled west on Hatcher. At that time, the
officers activated their flashing lights and attempted to perform a traffic stop. 
            The Cadillac did not immediately pull over. The driver entered the service road for the S.M.
Wright freeway. The Cadillac stopped in an apartment complex, in what Officer Green characterized
as a high crime, drug area. Appellant attempted to exit the vehicle, but he complied when Officer
Cross yelled for him to get back in the car. Officer Green approached the driver’s side and Officer
Cross approached the passenger side. There was one passenger in the front seat. Officer Green
identified himself and asked why Appellant was driving without his headlights. Appellant did not
answer. When the officer asked to see a driver’s license and proof of insurance, Appellant said that
he did not have a driver’s license Before Officer Green could determine whether Appellant had
insurance, Officer Cross signaled for him to go towards the back of the vehicle. Officer Green went
around the car and looked into the backseat, while Officer Cross moved to the driver’s side. 
            When Officer Green saw Appellant reach into a bag in the back, he pulled his duty weapon
and ordered the occupants of the car to put their hands where he could see them. Officer Green
removed the passenger and placed him in handcuffs, but Appellant exited the vehicle, pushed Officer
Cross, and took off running. The officers chased him through the apartment complex. They caught
up with him and tried to restrain him, but Appellant punched, threw his arms around, and struggled
with the officers on the ground until Officer Green used his OC spray. The spray affected everyone,
but the officers were able to place Appellant in custody for evading and resisting arrest. The
passenger of the vehicle had run away by the time the officers returned to the squad car but was
subsequently arrested for active warrants. While Officer Green and Officer Cross received medical
attention, Officer Brian Emerson performed an inventory search of the Cadillac. 
            Officer Emerson personally observed an unzipped blue duffel bag in the backseat of the
Cadillac. It contained eight knotted bags of marijuana in a Ziploc bag as well as numerous
“organized, pre-packaged” Ziploc baggies of marijuana in various sizes and colors. Both the blue
bag itself and an Altoids tin found inside the bag contained marijuana residue. Officer Emerson also
found a yellow piece of paper that appeared to be “a pawn shop slip or something like that,” an
electric bill, and two envelopes. A black toiletry bag inside the duffel bag contained an electrical
scale with cocaine residue on it, small individual vials commonly used for the drug PCP, an eye
dropper, a small baggie with cocaine residue on it, a medicine bottle, and a red cigarette box. 
Additionally, Officer Emerson found a shoe box next to the duffel bag containing bottles of
hydrocodone, a prescription cough syrup; what appeared to be a crack cocaine cookie; a small, clear
sliced pimento jar; a Crown Royal bag containing Ecstasy tablets; and a small plastic bag containing
small yellow baggies of crack cocaine. The field test performed by Sergeant Arnold Brown
positively identified the cookie as crack cocaine. 
            Officer Jeremiah Torrez was assigned to watch Appellant in the backseat of a squad car
during the inventory search of the car. At one point, Appellant maneuvered the handcuffs up over
himself and tried to escape from the squad car, but Officer Torrez pulled him out of the car, re-handcuffed him, and placed him back in the car. When Officer Torrez turned his attention to Officer
Green, Appellant took off running. The officers pursued him on foot. Appellant did not
immediately comply when he was caught; he kicked and flailed, and said that he had AIDS and other
diseases. Once the officers secured Appellant, he was placed in a different squad car and transported
to jail. Officer Torrez found a loaded semi-automatic handgun with a bullet in the chamber fifteen
to twenty feet away from the original struggle between Appellant and the officers. 
            Julian Aguilar of the Southwest Institute of Forensic Science testified about the results of the
laboratory testing of the substances found by the officers. The total amount of cocaine found in the
car, including adulterants or dilutants, was 59.0 grams. The medicine bottle contained 304 grams
of codeine and promethazine. The total weight of the marijuana found in the car was 1.19 pounds. 
            Officer Barry Ragsdale described what crack cocaine is and how it is made, packaged, and
distributed. Because the average quantity of cocaine is one-tenth of a gram and generally costs $10
on the street, 59 grams of cocaine would be worth $5,900. The baggies of marijuana would sell for
between five and ten dollars each. Ragsdale explained that Crown Royal bags are often used to
conceal drugs and money. He testified that the small yellow bags of crack cocaine were packaged
for resale. The presence of small glass vials and an eyedropper indicated that “somebody is going
to package up phencyclidine, PCP,” and the cough syrup is often sold in small jars like the pimento
jar. The scale found in the car was used to weigh drugs. In a response to a hypothetical, Officer
Ragsdale concluded that the facts indicated someone was operating a “poly drug operation,” meaning
selling more than one type of drug. He expressed his expert opinion that the cocaine was possessed
with the intent to distribute and the marijuana was packaged for resale, not personal consumption. 
            Appellant testified that on the day of the alleged offense, he had been playing video games
with friends. They decided to go to Club Blue that evening. Because he wanted to be seen driving
a better looking car than his own, he asked his former girlfriend, Cynthia Colbert, if he could borrow
her Cadillac. On their way to the club, the men stopped at an address on Hatcher to pick up their
friend, Corey. Appellant turned the headlights off because they were shining on the house. Corey
had apparently already left, so Appellant made a U-turn to head back toward the highway. He forgot
to turn his headlights back on. As he was about to reach the highway, the police stopped him. He
did not see the police flash their lights at any point, but only realized they wanted to stop him when
their top lights were activated. 
            Appellant did not pay attention to what items were in the Cadillac. He explained to the
officer that he did not have a driver’s license, and looked in the glove compartment to find the
insurance papers. As he reached into it, some papers fell out, including those found later by the
police. Appellant was unable to find proof of insurance. He was then asked what was inside the
duffle bag. He reached back into the bag because he did not know what was in it. He claimed he
had not put anything into the bag nor taken anything out. 
            Appellant complied when he was asked to step out of the car. When he heard the officer tell
his partner about the bag, he was afraid because he had a criminal background. He panicked as he
was being patted down and took off running. When the officers caught up with him, one “tackled”
him and “choked [him] down” while the other “put him in restraints” and handcuffed him. The
officers then sat him on the curb while they looked through the bag. Appellant then got up and ran
again, with his hands still behind his back. When Officer Green caught up to him, Green said, “I got
you now,” and then hit him in the mouth. Mace and tasers were used to subdue him and he was
slammed to the ground as the rest of the officers “joined in” and were kicking him. Appellant
testified that one of the officers yelled, “Hit him again. Hit him again.” Another officer bit him. 
Appellant was then placed in another squad car. Because one of the officers had bitten him,
Appellant shouted that he had AIDS and tuberculosis and that they were going to get a disease. 
            On cross-examination, Appellant admitted that he could smell the marijuana in the
courtroom, but said he did not know there was marijuana in the car. He admitted that the little pieces
of cocaine in the baggies were for sale, that the crack cocaine cookie contained a large, wholesale
amount of cocaine, and that the little vials were used for PCP. Appellant claimed that he brought
the pills to give to his friend for a venereal disease. Additionally, the yellow piece of paper with his
name on it was a receipt for stereo equipment he had purchased that morning and it was located in
the divider between the driver and passenger seats, not in the bag. 
FACTUAL SUFFICIENCY
            In Point of Error One, Appellant challenges the factual sufficiency of the evidence to support
his conviction for possession of marijuana. We begin with the standard for review. 
Standard of Review
            When conducting a factual sufficiency review, we view all of the evidence in a neutral light. 
Cain v. State, 958 S.W.2d 404, 408 (Tex.Crim.App. 1997). We will set the verdict aside only if (1)
the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is
against the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11
(Tex.Crim.App. 2000). Under the first prong of Johnson, we cannot say that a conviction is “clearly
wrong” or “manifestly unjust” simply because, on the quantum of evidence admitted, we would have
voted to acquit, had we been on the jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App.
2006). Under the second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury’s resolution. Id. Before finding that the
evidence is factually insufficient to support a verdict under the second prong of Johnson, we must
be able to say, with some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury’s verdict. Id. In conducting our factual sufficiency review, we must
also discuss the evidence which Appellant claims is the most important in allegedly undermining the
finding. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). We defer to the fact finder’s
determination of witness credibility and the weight given to the evidence. Cleveland v. State, 177
S.W.3d 374, 388 (Tex.App.--Houston [1st Dist.] 2005, pet. ref’d), cert. denied, 547 U.S. 1073, 126
S.Ct. 1774, 164 L.Ed.2d 523 (2006). 
Possession
            To prove possession of marijuana, the State must necessarily prove that the accused exercised
care, control, and management over the marijuana, and that he knew he was in possession of the
contraband. Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988). Possession involves more
than simply being where the action is; it requires exercise of dominion and control over the thing
allegedly possessed. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). Evidence
must affirmatively link the accused to the contraband by evidence indicating knowledge and control.
Menchaca v. State, 901 S.W.2d 640, 651 (Tex.App--El Paso 1995, pet. ref’d), citing Waldon v. State,
579 S.W.2d 499, 501 (Tex.Crim.App. 1979). The burden of establishing affirmative links rests upon
the State. Menchaca, 901 S.W.2d at 651, citing Damron v. State, 570 S.W.2d 933, 935
(Tex.Crim.App. 1978). Proof of knowledge is an inference drawn by the jury from all
circumstances. Dillon v. State, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Knowledge may arise
from the conduct of and remarks by the accused or from circumstances surrounding the acts engaged
in by the accused. Sharpe v. State, 881 S.W.2d 487 (Tex.App.--El Paso 1994, no pet.).
             An affirmative link, which may be shown by either direct or circumstantial evidence, “must
establish, to the requisite level of confidence, that the accused’s connection with the drug was more
than just fortuitous.” Brown v. State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Factors that may
affirmatively link the accused to contraband include whether: (1) the contraband was in plain view
or recovered from an enclosed place; (2) the accused was the owner of the premises or the place
where the contraband was found; (3) the accused was found with a large amount of cash; (4) the
contraband was conveniently accessible to the accused; (5) the contraband was found in close
proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused
possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or
found on the accused; (9) the physical condition of the accused indicated recent consumption of the
contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the
accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special
connection to the contraband; (14) the occupants of the premises gave conflicting statements about
relevant matters; (15) the accused made incriminating statements connecting himself to the
contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious
area under suspicious circumstances. Lassaint v. State, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus
Christi 2002, no pet.). Any list of affirmative links is non-exclusive. Castellano v. State, 810
S.W.2d 800, 805 (Tex.App.--Austin 1991, no pet.). The logical force the factors play in establishing
the elements of the offense is more important than the number of factors involved. See Jones v.
State, 963 S.W.2d 826, 830 (Tex.App.--Texarkana 1998, pet. ref’d).
            Appellant relies upon Humason v. State, 728 S.W.2d 363 (Tex.Crim.App 1987), partially
overruled on other grounds by Geesa v. State, 820 S.W.2d 154 (Tex.Crim.App. 1991), to support
his argument. There, a bag containing cocaine was in close proximity to the defendant and was
unzipped. Id. at 364. The court found the evidence insufficient to support a conviction for
possession of the cocaine. Id. at 367. The court’s ruling was based on the fact that there was no
evidence that the defendant had sole access to the truck, that the cocaine was in plain view, or that
the defendant was aware that the substance was cocaine. Id. 
Analysis
            The State established affirmative links showing that Appellant’s connection with the drugs
was more than just fortuitous. Appellant was present in the car, an enclosed space, with one other
person when the officers pulled him over. The officers observed a blue duffel bag “wide open, full,
unzipped” with marijuana coming out of it in plain view in the backseat. The shoe box containing
the cocaine was found next to the duffle bag. The drugs were accessible to Appellant and in very
close proximity to the driver’s seat. The bag was close enough for him to reach into it during the
initial stop. The officers found 59.0 grams of crack cocaine and 1.19 pounds of marijuana In
addition to the large quantities of crack cocaine and marijuana, the officers also found drug
paraphernalia and prescription medication in Appellant’s name. Moreover, Appellant’s repeated
attempts to flee the scene suggest consciousness of guilt. 
            We also find this case distinguishable from Humason. 728 S.W.2d at 363. The cases are
similar in that the officers found an unzipped bag next to the defendants. But unlike Humason, there
are numerous other factors here which affirmatively link Appellant to the duffle bag. Humason was
not caught reaching into the bag when pulled over. There were no papers with his name found
within the bag. And Humason did not try to escape once he was confronted by the officers. Those
factors are present here, and ultimately led the jury to find an affirmative link between the Appellant
and the seized contraband. We defer to the fact finder’s determination of witnesses’ credibility and
of the weight given to the evidence. Cleveland, 177 S.W.3d 388. 
            Viewing all of the evidence in a neutral light we conclude that the evidence is not so weak
that the verdict is clearly wrong and manifestly unjust, or that the verdict is against the great weight
and preponderance of the evidence. See Johnson, 23 S.W.3d 11. Because the evidence was factually
sufficient to support the conviction for possession of marijuana, we overrule Point of Error One. The
judgment of the trial court is affirmed.

April 14, 2010                                                             
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)