COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| CECILIA ORTIZ, | | No. 08-09-00185-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | Criminal District Court No. 1 |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20080D01636) |
| | § | |

**O P I N I O N**

Cecilia Ortiz was charged by indictment with one count of possession of marijuana, more than five pounds and less than fifty pounds. A jury found Appellant guilty and the parties reached an agreement regarding punishment. The trial court assessed punishment at five years' confinement in the Texas Department of Criminal Justice-Institutional Division, suspended that confinement, and placed Appellant on community supervision for five years. For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

Customs and Border Protection Officer Sergio Martinez was on duty working the graveyard shift on January 8, 2008. His duties included inspecting incoming traffic from Mexico to process the vehicles and passengers. At around 6:25 a.m., a bluish-green 1999 Ford F-150 pickup truck caught his attention. Appellant was driving and her two minor children were passengers.

Martinez asked Appellant whether was bringing anything back from Mexico and Appellant said she was not. Martinez then asked if Appellant owned the truck. Appellant told him that it belonged to her brother, Francisco Ortiz. He had bought it about a month earlier in Juarez, Mexico, but she had been driving it for about a week. Martinez next asked for the vehicle registration and

Appellant handed him a Mexican vehicle registration listing the owner as Luis Gaytan. Appellant did not know who Gaytan was.

Martinez observed that as Appellant drove up for inspection, she was holding her legal permit resident alien card in her right hand and her hand was visibly shaking. She also had watery eyes. Martinez believed Appellant exhibited signs of nervousness. He described how Appellant's left hand held onto the steering wheel with a "death grip" and he could see her knuckles turning white. He inspected the gas tank, the bed of the vehicle, and the spare tire. The spare was mounted underneath the truck and it was extremely clean compared to the rest of the undercarriage which had dried mud, dry dirt, and dust. Martinez also noticed fresh tar where the rim met the tire. He explained that the purpose of the tar was to seal the scent of drugs.

After the primary inspection, Martinez called Officer Herbert Monahan for assistance. When asked to step out of the vehicle, Appellant did not display any reaction or say anything. Once the truck moved to secondary inspection, a K-9 officer and his dog inspected it. Martinez eventually lowered the spare tire from the truck and sliced it open. It contained thirty bundles of what appeared to be marijuana. The bundles were removed and a field test of the green leafy substance resulted in a positive test for marijuana.

Officer Monahan testified that Officer Martinez called him for assistance around 6:25 a.m. Monahan recalled having a conversation with Appellant. When he asked Appellant about the purpose of her trip to Mexico, she responded that she had been visiting relatives overnight. She claimed that the truck belonged to her brother, Francisco Ortiz. When the registration showed the name of Luis Gaytan, Monahan asked Appellant, "If your brother had owned it for a month, how come it's not in his name?" Appellant responded, "Well, I guess he hasn't had the time to change it." Monahan observed that Appellant was very nervous and her whole body was visibly shaking.

According to Monahan, Appellant also had a forced smile. When Monahan escorted Appellant and her children to the head house, she did not say a word.

Jose Luis Rivera, a detective with metro narcotics in the Sheriff's Department, testified that he has worked undercover for ten years negotiating deals for marijuana, cocaine, and other drugs. Rivera testified that depending on the quality, the price of marijuana in El Paso is between $230 and $280 per pound. The price for storing marijuana can be from $10 to $20 a day depending on the amount. The price for transporting a small load of marijuana across the bridge can be $500. It can also be $50 a pound for larger loads. Rivera identified Appellant's role in this case as the transporter. Typically, the motive of a transporter is to make money. Although the transporter typically does not load the vehicle, the transporter is usually aware of what the vehicle contains. In Rivera's experience, the grease or tar used between the tire and the rim is to throw off any dogs that might alert to the odor of marijuana.

Appellant testified in her own defense. In 2008, she was living and working in El Paso. She owned a 2001 Dodge Stratus which needed repairs. She took it to a shop in Juarez where it remained for two weeks. During that time, Appellant borrowed her brother's car. The night before her arrest, Appellant stayed in Juarez at her mother's house. When she crossed the Ysleta Port of Entry, she was on her way to drop the children off at school. She denied having watery eyes or shaky hands. She also denied knowing that there was marijuana in her vehicle.

## SUFFICIENCY OF THE EVIDENCE

In her sole issue for review, Appellant complains that the evidence is legally insufficient to sustain her conviction for possession of marijuana.

### Standard of Review

In reviewing the legal sufficiency of evidence, we consider all evidence in the light most

favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007), *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2181.

### *Possession*

To prove possession of marijuana, the State must necessarily prove that the accused exercised care, control, and management over the marijuana, and that he knew he was in possession of the contraband. *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988). Possession involves more than simply being where the action is; it requires exercise of dominion and control over the thing allegedly possessed. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). Evidence must affirmatively link the accused to the contraband by evidence indicating knowledge and control. *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App--El Paso 1995, pet. ref'd), *citing Waldon v. State*, 579 S.W.2d 499, 501 (Tex.Crim.App. 1979). The burden of establishing affirmative links rests upon the State. *Menchaca*, 901 S.W.2d at 651, *citing Damron v. State*, 570 S.W.2d 933, 935 (Tex.Crim.App. 1978). Proof of knowledge is an inference drawn by the jury from all circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Knowledge may arise from the conduct of and remarks by the accused or from circumstances surrounding the acts engaged in by the accused. *Sharpe v. State*, 881 S.W.2d 487 (Tex.App.--El Paso 1994, no pet.).

An affirmative link, which may be shown by either direct or circumstantial evidence, "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Factors that may affirmatively link the accused to contraband include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). Any list of affirmative links is non-exclusive. *Castellano v. State*, 810 S.W.2d 800, 805 (Tex.App.--Austin 1991, no pet.). The logical force the factors play in establishing the elements of the offense is more important than the number of factors involved. *See Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.--Texarkana 1998, pet. ref'd).

*Analysis*

The State established affirmative links showing that Appellant's connection with the marijuana was more than just fortuitous. She was the driver of the truck attempting to cross the

Ysleta Port of Entry from Mexico and she had been driving the vehicle for at least five days. The officers testified that Appellant was extremely nervous, visibly shaking, and had watery eyes. She also appeared to have a "death grip" on the steering wheel and a forced smile. Appellant gave the officers incorrect information regarding the ownership of the vehicle. Officer Martinez testified that the spare tire containing the marijuana was cleaner than the undercarriage of the truck and had been in place "not more than a day or two." Because Appellant testified that she had possession of the car for the previous week, the jury could have inferred that the marijuana was loaded in the spare tire during that time. The jury was also free to disbelieve Appellant's contradicting testimony that she did not display any signs of nervousness or that her behavior did not suggested a consciousness of guilt. Finding the evidence to be legally sufficient, we overrule Appellant's sole point and affirm the judgment of the trial court.

August 31, 2010

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)